**Thomas D. PREVISH, Executor of the Estate of Judith A. Bills, Deceased, Appellant,**

v.

**NORTHWEST MEDICAL CENTER—OIL CITY CAMPUS and Robert M. Pilewski, M.D., Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 4, 1996.

Filed April 4, 1997.

David J. Watson, Pittsburgh, for appellant.

Matthew W. McCullough, Erie, for Northwest, appellee.

Lynn E. Bell, Pittsburgh, for Pilewski, appellee.

SAYLOR, Judge:

Has a survival action been timely commenced, when a writ of summons naming the decedent's estate as plaintiff is filed before

the statute of limitations has run and a complaint naming the executor of the estate as plaintiff is filed after the statute of limitations has run?

This is the fundamental issue presented by the appeal of Plaintiff/Appellant, Thomas D. Prevish, executor of the estate of Judith A. Bills, from the order of the Court of Common Pleas of Venango County sustaining the preliminary objections of Defendants/Appellees, Northwest Medical Center–Oil City Campus ("Northwest") and Robert M. Pilewski, M.D., and striking the complaint.

Appellant urges us to find that either the "relation back" doctrine or Section 3376 of the Probate, Estates and Fiduciaries Code ("the Probate Code"), 20 Pa.C.S.A. § 3376, operates to save the present action from the bar of the statute of limitations. Appellees argue that both of Appellant's theories are unavailing. We agree, and therefore affirm.

The history of the case is as follows: From September 11, 1992, until October 15, 1992, the decedent, Judith A. Bills, was hospitalized at Northwest, where Dr. Pilewski treated her for meningitis. She died of unrelated causes on June 12, 1994.

The present action was commenced on September 8, 1994, when Appellant, through his attorney, caused a writ of summons to be filed against Appellees. The caption of the writ identified the plaintiff as "Estate of Judith A. Bills, Deceased."

On November 18, 1994, Appellant filed a complaint, having been ruled to do so by Appellees. The caption of the complaint identified the plaintiff as "Thomas D. Prevish, Executor of the Estate of Judith A. Bills, Deceased." In the complaint it was averred that Appellant had been appointed executor on November 15, 1994. The gravamen of the complaint, which was brought pursuant to the Survival Act, 42 Pa.C.S.A. § 8302, was that Appellees' allegedly negligent treatment of Mrs. Bills had caused her to suffer a stroke and paralysis which could have been prevented. The complaint sought damages for the medical expenses and pain and suffering that Mrs. Bills had sustained while she lived.

Both Appellees filed preliminary objections in response to the complaint. Northwest asserted in its "Preliminary Objections/Motion to Strike" that Appellant, by amending the caption of his pleading to correct the name of a party without having obtained either the consent of opposing counsel or leave of the court, had violated Pa.R.C.P. No. 1033. Rule 1033 provides in pertinent part that

[a] party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading.

Northwest asked the court to strike the complaint pursuant to Pa.R.C.P. No. 1028 "since it does not conform to law." In his answer Appellant argued that the correction of the plaintiff's name in the caption without consent of counsel or leave of court did not require dismissal of the action.

The preliminary objections filed by Dr. Pilewski were more detailed, asserting in pertinent part the following:

4. In a survival action pursuant to 42 Pa.C.S.A. § 8302, the statute of limitations begins to run on the date of injury. If a period of two years has expired following the date of injury, an action for such injury is barred and cannot be asserted by the personal representatives of the injured person following his death. *Baumgart v. Keene Building Products Corp.*, 430 Pa.Super. 162, 633 A.2d 1189 (1993).

5. Defendant seeks a Motion to Strike plaintiff's Complaint in its entirety as the defect of suing in the name of the estate of a decedent rather than in the name of the personal representative thereof may not be amended after the running of the statute of limitations on the cause of action, since it would constitute the introduction of a new party. 21 Standard Pennsylvania Practice 2d § 115:7; *Mallick v. Middletown Township*, 60 Pa. D. & C.2d 79 (1972).

6. Defendant seeks a Motion to Strike plaintiff's Complaint in its entirety as the caption amendements [sic] in the Complaint is in direct violation of Pennsylvania Rule of Civil Procedure 1033. When a party amends a pleading without first

seeking consent of opposing counsel or leave of court, the proper form of objection is a Motion to Strike. *Mackey v. Adamski,* 286 Pa.Super. 456, 429 A.2d 28 (1981); *Rang v. Allentown Women's Center,* 5 Pa. D. & C.4th 157 (1989).

Dr. Pilewski asked the court to grant the preliminary objections and dismiss the complaint in its entirety.

In response Appellant filed an answer in which he asserted, first, that "under the doctrine of relation back, an amendment designating the personal representative as plaintiff after the running of the Statute of Limitations, does not constitute the introduction of a new party"; and, second, that "an amendment adding the name of the personal representative to a timely filed survival action is not in violation of [Rule] 1033."

On March 20, 1995, after oral argument, the trial court entered an order sustaining Appellees' preliminary objections and granting the motion to strike the complaint. In an accompanying opinion, the trial court observed that Rule 1033 required a party to seek either consent of opposing counsel or leave of court before amending the caption on a pleading, that Appellant had amended the caption of his complaint without seeking either consent of counsel or leave of court, and that the proper form of objection to Appellant's conduct was a motion to strike. The court then proceeded as follows:

> Based on [Appellant's] Complaint, the last possible date of injury was October 15, 1992. [Appellant's] Writ of Summons was thus filed before the expiration of the two year statute of limitations, but the Complaint was filed after the expiration of the statute. The paramount issue is thus whether [Appellant's] caption amendment in the Complaint is permissible pursuant to Rule 1033.

In other words, the court undertook to determine whether leave to amend should be granted retroactively. Relying on a Bucks County case, *Mallick v. Middletown Township,* 60 Pa. D. & C.2d 79 (1972), the court concluded that it should not:

> The Writ of Summons, captioned "Estate of Judith A. Bills, Deceased", was filed before the expiration of the two year statute of limitations on October 15, 1994. [Appellant's] Complaint, with Thomas D. Prevish named as the executor of the Estate of Judith A. Bills, was filed on November 15, 1994,[1] **after** the expiration of the two year statute of limitations. As an estate has no capacity to sue and a personal representative was not designated until after the expiration of the statute of limitations, [Appellant] may not now amend the Complaint.

Opinion, March 20, 1995, at 4 (emphasis in original). The court found no merit in Appellant's relation back argument, concluding that the case law cited by Appellant was distinguishable.

On March 28, 1995, Appellant filed a notice of appeal to the Superior Court from the order striking the complaint. On April 5, 1995, he filed with the trial court an "application for reconsideration of order of March 20, 1995 and motion to amend pursuant to [Rule] 1033." Appellant asked the trial court to grant reconsideration of the order, as it was empowered to do under Pa.R.A.P. 1701(b),[2] and to acknowledge that the statute of limitations on the survival action had been extended by Section 3376 of the Probate Code until the end of one year following Mrs. Bills' death. Both Appellees filed responses opposing reconsideration, and the trial court took no action on Appellant's application.

In response to the court's directive of March 28, 1995, Appellant filed a statement of matters complained of on appeal. In the

---

1. In fact, the complaint was sworn on November 15, 1994, but was not filed until November 18, 1994.

2. "After an appeal is taken ..., the trial court ... may ... (3) [g]rant reconsideration of the order which is the subject of the appeal ..., if ... (i) an application for reconsideration of the order is filed in the trial court ... within the time provided or prescribed by law; and (ii) an order expressly granting reconsideration of such prior order is filed in the trial court ... within the time prescribed by these rules for the filing of a notice of appeal.... A timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal...." Pa.R.A.P. 1701(b)(3).

statement he included not only his claims based on the relation back doctrine and on Section 3376, but also a claim that the statute of limitations had yet to expire owing to the "discovery rule."

A panel of this Court reversed the trial court's order, finding that Section 3376 of the Probate Code extended the applicable statute of limitation. Reargument was granted before the Court *en banc.*

We turn now to the merits of the issues raised, in the alternative, by Appellant.[3] First, Appellant argues that the trial court erred in failing to recognize that under the discovery rule there exists an issue of fact as to when the statute of limitations began to run on the survival action. Second, Appellant contends that the trial court erred in failing to recognize that in fact the statute of limitations had not expired by the time the complaint was filed because Section 3376 of the Probate Code operated to extend the statute until one year after the decedent's death. Finally, Appellant argues that even if the statute had expired before the complaint was filed, the trial court erred in refusing to apply the "relation back" doctrine to permit the amendment of the caption.

■ In considering these issues, we are mindful that

> preliminary objections which result in the dismissal of a cause of action should be sustained only in cases that are [so] 'clear and free from doubt' that the plaintiff will be unable to prove legally sufficient facts to establish any right to relief. *Bower v. Bower,* 531 Pa. 54, 57, 611 A.2d 181, 182 (1992). All doubts in this determination should be resolved by overruling the preliminary objections. *National Check v. First Fidelity Bank,* 442 Pa.Super. 211, 214, 658 A.2d 1375, 1377 (1995).

*Chiropractic Nutritional Associates, Inc. v. Empire Blue Cross and Blue Shield,* 447 Pa.Super. 436, 453, 669 A.2d 975, 984 (1995).

■ Appellant's first issue concerns the "discovery rule," which provides that where a plaintiff does not know of the existence of an injury and cannot reasonably be expected to learn of its existence within the period prescribed by statute, the limitations period does not begin to run until discovery of the injury becomes reasonably possible. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040 (1992). "Whether the statute [of limitations] has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury." *Id.,* 530 Pa. at 325, 608 A.2d at 1043. According to Appellant, the trial court "either overlooked or refused to consider" the application of the discovery rule to the survival action.

■ Both Appellees argue vigorously that Appellant has waived the issue of the discovery rule by failing to raise the issue in the trial court. We agree. A plaintiff who wishes to assert the discovery rule may do so in one of two ways: 1) by pleading in the complaint sufficient facts to sustain application of the rule; or 2) by waiting until the defendant asserts a statute of limitations defense in new matter and then raising the discovery rule in a responsive pleading. *Fox v. Byrne,* 363 Pa.Super. 70, 525 A.2d 428 (1987).

Appellant did not pursue either course. Nowhere in Appellant's complaint is it suggested that there exists a question of fact as to when Appellant should reasonably have been aware of the decedent's injury.[4] Although neither Appellee explicitly asserted a statute of limitations defense as new matter, Appellant did not argue that Appellees there-

---

**3.** Although Appellant's statement of questions involved presents four issues, the second of these ("Did the trial court err[] in striking plaintiff's Complaint because it contained an amendment to the caption made without leave of court or consent of counsel where the Complaint was filed within the statute of limitations?") does not appear in the argument section of the brief as a separate issue. For ease of discussion, we have changed the order of the remaining three issues.

**4.** Indeed, as Northwest points out, "[n]othing contained **in appellant Prevish's Brief** suggests that there was any barrier which prevented Prevish from obtaining information relevant to his cause of action" (emphasis added). Appellant's failure to develop the issue on appeal lends additional support to our finding of waiver, *infra.*

by waived the issue. *See,* Note to Pa.R.C.P. No. 1028(a)(2)–(4) (excluding, as grounds for preliminary objection, bar of statute of limitations; such defense can be asserted only in a responsive pleading as new matter under Rule 1030); Pa.R.C.P. No. 1030(a) (affirmative defenses, including statute of limitations, shall be pleaded in responsive pleading as new matter). The statute of limitations issue was implicitly introduced into this case in the preliminary objections filed by Dr. Pilewski. In his answer to those preliminary objections, Appellant did not aver that there was a question of fact as to when the statute began to run. To the contrary, he denied "that a timely filed survival action initiated in the name of the Estate of the decedent may not be amended **after the running of the Statute of Limitations** to designate the name of a subsequently appointed personal representative" (emphasis added). Not until the filing of his statement of matters complained of on appeal did Appellant assert that the discovery rule applied to the present case.[5] Raising this claim at that point did not preserve it for appeal. *Commercial Credit Corporation v. Cacciatiore,* 343 Pa.Super. 430, 495 A.2d 540 (1985). Therefore, we conclude that the issue has been waived.

Next, Appellant argues that Section 3376 of the Probate Code operated to extend the statute of limitation applicable to the present action. Section 3376 reads as follows:

> Any statute of limitation which would bar any debt or liability owed the estate of a decedent within one year after the decedent's death shall be extended until the end of one year following the decedent's death. Failure or delay in taking out letters testamentary or of administration shall not affect the operation of any statute of limitations applicable to a debt or liability owed the estate of a decedent.

20 Pa.C.S.A. § 3376. According to Appellant, the survival action filed on behalf of the decedent's estate constitutes a "debt or liability owed the estate of [the] decedent...." Therefore, Appellant argues, the statute of limitations applicable to the action was extended by operation of Section 3376 "until the end of one year following the decedent's death"—that is, until June 12, 1995, some seven months after the complaint was filed in the name of Appellant as executor of the estate. Under Appellant's theory, questions concerning the amendment of the caption are irrelevant, since the action would have been commenced not by the improperly captioned writ of summons, but by the properly captioned (and timely filed) complaint.

∎ Does the present action constitute a "debt or liability owed the estate of a decedent" within the meaning of Section 3376? This is a question of first impression, as our research has uncovered no case that has addressed the issue.

Accordingly, we turn for guidance to the settled principles of statutory interpretation. When we seek to determine the meaning of statutory language, our fundamental object is to ascertain and effectuate the legislative intent behind the statute. 1 Pa.C.S.A. § 1921(a); *Zimmerman v. O'Bannon,* 497 Pa. 551, 442 A.2d 674 (1982); *Freeze v. Donegal Mutual Insurance Company,* 412 Pa.Super. 305, 603 A.2d 595, *appeal denied,* 532 Pa. 656, 615 A.2d 1312 (1992); *Walker v. Roney,* 407 Pa.Super. 620, 595 A.2d 1318 (1991), *appeal denied,* 529 Pa. 658, 604 A.2d 250 (1992). Thus, when the statutory language is clear and free from ambiguity, we are not at liberty to disregard the letter of the language under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b); *Coretsky v. Board of Commissioners of Butler Township,* 520 Pa. 513, 555 A.2d 72 (1989); *Zimmerman, supra.* When the words of the statute are not explicit, we may consider, *inter alia,* the factors set forth at 1 Pa.C.S.A. § 1921(c)(1)–(8). *Coretsky, supra; Freeze, supra.* These include the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied and the object to be attained, the consequences of a particular interpretation, and the contemporaneous legislative history. In addition, the legislature itself has specified certain presumptions to be used in ascertain-

---

**5.** Appellant maintains that he raised the issue at oral argument before the trial court. Oral argument was not transcribed, however, and North- west asserts that Appellant did not raise the issue at that time.

ing its intent, one of which is the presumption that it "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1). It is fundamental to our effort that the words and phrases of a statute be construed according to their common meaning and accepted usage. 1 Pa.C.S.A. § 1903(a); *Key Savings and Loan Association v. Louis John, Inc.,* 379 Pa.Super. 226, 549 A.2d 988 (1988), *appeal dismissed,* 529 Pa. 573, 605 A.2d 1223 (1992).

■ Before considering the meaning of the terms "debt" and "liability," it is essential that we understand the precise nature of the action at issue. A survival action has its origin in an injury to the decedent, and the damages sought are those for the pain and suffering experienced by the decedent between the time of injury and his or her death. *Moyer v. Rubright,* 438 Pa.Super. 154, 651 A.2d 1139 (1994), *appeal denied,* 540 Pa. 649, 659 A.2d 988 (1995). In other words, it is the personal injury action, brought by the decedent's estate in the person of its executor or administrator, which would have been brought by the decedent had he or she lived.

■ As a general rule, a personal injury tort claim remains unliquidated until it is reduced to a definite amount by a verdict or a settlement. *Hurley v. Hurley,* 342 Pa.Super. 156, 492 A.2d 439 (1985). Given the procedural posture of the present case, therefore, the question before us is whether an unliquidated personal injury tort claim is a debt or liability owed to a decedent's estate within the meaning of Section 3376.

■ Section 3376 does not define the words "debt" or "liability," nor does the definitional provision of the Probate Code, 20 Pa.C.S.A. § 102. The general definitional provision of the Pennsylvania Consolidated Statutes, 1 Pa.C.S.A. § 1991, defines "[d]ebtor" as "[o]ne who owes to another the performance of an obligation." By inference, therefore, a debt is an obligation the performance of which is owed to another. Section 1991 of Title 1 does not define "liability," however.

To support his argument that the term "liabilities" encompasses the present action, Appellant sets forth the following excerpt from the definition of "liability" offered in *Black's Law Dictionary:*

> The word is a broad legal term ... referred to as of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent, or likely ...; an obligation which may or may not ripen into a debt[.]

*Black's Law Dictionary,* 823 (5th ed., 1979). In fact, the definition includes language that is even more favorable to Appellant's argument:

> condition of being actually or potentially subject to an obligation; condition of being responsible for a possible or actual loss, penalty, evil, expense, or burden; ... every kind of legal obligation, responsibility, or duty; ... responsibility for torts; ... unliquidated claim.

*Id.* (citations omitted).

The pertinent question, however, is whether the law of this Commonwealth lends itself to such an expansive definition of "liability." There is little discussion of the term in our case law. In *McCullough v. National Bank of Union City,* 127 Pa.Super. 452, 193 A. 65 (1937), the Superior Court observed that

> "[l]iability" is defined in Black's Law Dictionary to be legal responsibility; in Webster, as the state of being bound or obliged in law or justice; and in Bouvier's Law Dictionary as the state of one who is bound in law and justice to do something which may be enforced by action.

*Id.,* 127 Pa.Super. at 457, 193 A. at 66. The Supreme Court has noted that "liabilities" is a broader term than "debts" and has been held to include an employee's right to reinstatement after wrongful discharge. *McCandless Township v. Wylie,* 375 Pa. 378, 100 A.2d 590 (1953), citing *National Labor Relations Board v. Universal Camera Corporation,* 179 F.2d 749 (2d Cir.1950). *See also, Chiropractic, supra* (under Pennsylvania law, an unliquidated personal injury tort claim is not a property right and is not assignable); *DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871 (1987) (same), *appeal denied,* 517 Pa. 631, 539 A.2d 811 (1988);

*Hurley, supra* (Pennsylvania courts have been reluctant to attach complete panoply of property rights to unliquidated personal injury tort claim).

Although there is no legislative history to guide us, the Official Comment to 20 Pa. C.S.A. § 3376 explains that the amendment of Section 3376 (i.e., the addition of the provision at issue here) was suggested by Section 3–109 of the Uniform Probate Code and serves to extend "the statute of limitation on a debt owed the estate of a decedent to one year to conform to the period to which statutes of limitation are extended on claims against the estate under Section 3383." Appellant asserts that both Section 3–109 of the Uniform Probate Code and Section 3383 of Title 20 support its interpretation of "any debt or liability."

Section 3–109 of the Uniform Probate Code states in pertinent part that

> [n]o statute of limitation running on a **cause of action** belonging to a decedent which had not been barred as of the date of his death, shall apply to bar **a cause of action** surviving the decedent's death sooner than four months after death.

Uniform Probate Code § 3–109 (emphasis added). Similarly, Section 3383 provides in pertinent part that

> [t]he death of a person shall not stop the running of the statute of limitations applicable to any claim against him, but a claim which otherwise would be barred within one year after the death of the decedent shall not be barred until the expiration of one year after his death.

20 Pa.C.S.A. § 3383 (emphasis added).

■ Although the General Assembly looked to both of these statutes when amending Section 3376, it did not utilize the pertinent language of either. Section 3376 as amended does not refer to a "cause of action" or a "claim," but to a "debt or liability." Where one section of a statute contains a particular provision, the omission of such a provision from a similar section is significant to show a different legislative intent for the two sections. *Walker, supra, citing Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392 (1979), *quoting Novicki v. O'Mara*, 280 Pa. 411, 124 A. 672 (1924) ("A change of language in separate provisions of a statute is prima facie evidence of a change of intent").

In the present case, therefore, the choice of the phrase "debt or liability" and the omission of the terms "claim" and "cause of action" persuades us that the drafters of amended Section 3376 intended the phrase "debt or liability" to mean something other than "claim" or "cause of action." If the drafters had intended to extend statutes of limitation which would otherwise bar not only any debt or liability owed the estate of a decedent but also **any cause of action or unliquidated claim belonging to the estate of a decedent,** they could easily have said so. Because they did not, we conclude that Section 3376 does not apply to extend the statute of limitation in this case.

Finally, we consider whether, as Appellant asserts, the trial court erred in failing to apply the "relation back" doctrine to permit the amendment of the caption.

■ It is settled law that a decedent's estate cannot be a party to litigation unless a personal representative exists. *Estate of Gasbarini v. Medical Center of Beaver County*, 487 Pa. 266, 409 A.2d 343 (1979); *D'Orazio v. Locust Lake Village, Inc.*, 267 Pa.Super. 124, 406 A.2d 550 (1979); *Marzella v. King*, 256 Pa.Super. 179, 389 A.2d 659 (1978); *McGuire v. Erie Lackawanna Railway Company*, 253 Pa.Super. 531, 385 A.2d 466 (1978); *Lovejoy v. Georgeff*, 224 Pa.Super. 206, 303 A.2d 501 (1973); *Wilkes–Barre General Hospital v. Lesho*, 62 Pa.Commw. 222, 435 A.2d 1340 (1981). Stated differently, all actions that survive a decedent must be brought by or against the personal representative of the decedent's estate. *D'Orazio, supra; Lesho, supra.*

■ The practical significance of this principle was explained by the Supreme Court some sixty years ago:

> It is fundamental that an action at law requires a person or entity which has the right to bring the action, and a person or entity against which the action can be maintained. By its very terms, an action at law implies the existence of legal par-

ties; they may be natural or artificial persons, but they must be entities which the law recognizes as competent. A dead man cannot be a party to an action, and any such attempted proceeding is completely void and of no effect. This disposes of the further argument that the defect [can be] cured by [an] amendment. There can be no amendment where there is nothing to amend. In any event, an amendment the effect of which is to bring in new parties after the running of the statute of limitations will not be permitted.

*Thompson v. Peck*, 320 Pa. 27, 30, 181 A. 597, 598 (1935) (citations omitted), quoted in *Marzella, supra*, 256 Pa.Super. at 182, 389 A.2d at 661. As with a dead man, so with an estate lacking a personal representative: an action brought by or against such an estate is void, and a subsequent attempt to "amend" the caption to specify the correct party is in fact the addition of a new party, which addition will not be permitted after the statute of limitations has expired. *Marzella, supra.*

██ In the present case, Appellant argues that the trial court erred in finding that he had attempted to amend the caption of the complaint to add a new party after the statute of limitations had run. Appellant contends that "[i]n accordance with the doctrine of 'relation back,' the appointment of the executor of the decedent's estate related back to the date on which suit was commenced within the statute of limitations[,] and [Appellant's] correction of the caption to reflect the executor's formal appointment is allowable under [Rule] 1033 since a new party has not been added."

██ "Simply stated, the doctrine of relation back as applied to cases where an estate is a party means that the courts under certain circumstances will validate the acts of the personal representative of the estate which preceded the date of his official appointment." *Lesho*, 62 Pa.Cmmw. at 225, 435 A.2d at 1342. Thus, where a plaintiff, acting as the personal representative of an estate, initiates an action before the statute of limitations has run, but also before his or her appointment as personal representative has been finalized, the doctrine of relation back may be applied in appropriate circumstances to validate the filing of the action, even though the plaintiff's appointment is not finalized until after the limitations period has expired. *Gasbarini, supra; McGuire, supra; D'Orazio, supra; Lesho, supra.*

Appellant relies on the cases just cited to support his claim to application of the relation back doctrine. We agree with the trial court, however, that Appellant's reliance is misplaced, as the cited cases are distinguishable.

In *McGuire*, the earliest of the cases, the plaintiff petitioned to be appointed administrator of the estate of his teenage daughter, who had died of injuries sustained when she was struck at a railroad crossing by an Erie Lackawanna freight train. Although the plaintiff paid the filing fee, he was not issued letters of administration because he had not posted bond. On the day before the limitations period expired, the plaintiff commenced a survival action by filing a complaint in which he averred that he was the administrator of his daughter's estate. It was not until three weeks later, however, that the plaintiff posted the necessary bond and was issued letters of administration. The defendant railroad asserted a statute of limitations defense in its answer and new matter and in a motion for summary judgment. The trial court denied summary judgment and certified its order to the Superior Court as involving a controlling question of law.

The Superior Court held that the plaintiff's actions had been sufficient to fulfill the purposes of the statute of limitations (namely, "to expedite litigation and thus to discourage delay and the presentation of stale claims[,]" *id.*, 253 Pa.Super. at 535, 385 A.2d at 468), within the statutory period.

When the complaint was filed, it represented a timely statement of every element of the claim, except in one respect: the plaintiff appellee had not been formally named administrator. That deficiency, however, was minimal. At the time the complaint was filed, that is, within the statutory period, appellee had applied for letters of administration.... Appellee's appointment as administrator was substantially assured at

the time the complaint was filed, that is, within the statutory period of limitations. *Id.*, 253 Pa.Super. at 535–36, 385 A.2d at 468. The Superior Court contrasted the case before it with the earlier case of *Lovejoy, supra*, in which a plaintiff had timely filed a writ of summons on behalf of his injured son against the father of a deceased driver as "administrator" of the driver's estate. Although the plaintiff had applied for the issuance of letters of administration for the estate, letters had not yet been issued when the plaintiff filed the writ of summons; it was not until after the statute of limitations had run that the decedent's father was appointed administrator. The *McGuire* court noted that in *Lovejoy*,

> when the [writ of summons [6]] was filed, the identity of the administrator was uncertain; either parent could have renounced the right to letters and the other accepted, or both could have renounced.... Thus it was quite possible that the [writ of summons] had identified as a party someone who was not, and would not become, a party, so that the [writ of summons] might have been served on the wrong person entirely.

*McGuire*, 253 Pa.Super. at 537, 385 A.2d at 469 (footnote omitted). The *McGuire* court reasoned that it was such instability which proved fatal to application of the relation back doctrine in *Lovejoy*. In *McGuire*, by contrast,

> the defendant railroad could "proceed on the presumption that" appellee's appointment as plaintiff-administrator would be completed. Given this fact, the relationship between the parties was not affected with the sort of instability that statutes of limitations seek to preclude.

*Id.*, 253 Pa.Super. at 536, 385 A.2d at 468–69, quoting *Beckman v. Owens*, 135 Pa.Super. 404, 408, 5 A.2d 626, 627 (1939). Accordingly, the Superior Court applied the doctrine of relation back "so that the action of appellee in instituting this suit within the limitation period but prior to his appointment may be validated by his appointment after the peri-

od." *Id.*, 253 Pa.Super. at 533–34, 385 A.2d at 467.

The Superior Court reached the same result on similar facts in *D'Orazio, supra*. That case arose from the drowning death on July 8, 1973, of a nine-year-old child in a lake on the defendants' property. On June 11, 1974, a writ of summons was issued in the name of the child's mother, "Theresa D'Orazio, Trustee, ad litem," as plaintiff. The plaintiff-mother filed a petition for letters of administration one month later. On October 24, 1974, she filed a complaint naming herself, "Administratrix of the Estate of Patrick L. Lawler, Deceased," as plaintiff. Because she had obtained the required bond and paid bond premiums for several years, the plaintiff assumed that letters of administration had been issued to her. Unbeknownst to her, however, letters had not been issued because she had failed to execute the bond. The plaintiff's counsel eventually learned of the omission, the plaintiff signed the bond on January 11, 1977, and letters of administration were issued to her. The defendants raised a statute of limitations defense, and the trial court, refusing to apply the relation back doctrine, granted the defendants' motion for summary judgment.

On appeal, the Superior Court concluded that the case was controlled by *McGuire, supra*.

> Although appellant here was finally granted letters much longer after the statute's running than was Mr. McGuire, this fact does not alter our disposition. The crucial factors are that letters had been requested and the action commenced within the statutory period, and appellant's appointment as administratrix, under the circumstances of this case, "was substantially assured at the time the complaint was filed, ... within the statutory period of limitations."

*Id.*, 267 Pa.Super. at 129, 406 A.2d at 552, quoting *McGuire*, 253 Pa.Super. at 535, 385 A.2d at 468. Accordingly, the Superior Court, applying the doctrine of relation back,

---

6. In its discussion of *Lovejoy*, the *McGuire* court indicates that it was a complaint which was filed prior to the expiration of the limitations period. In fact, it was a writ of summons; a complaint was filed later.

reversed the order of summary judgment and remanded for further proceedings.

The Supreme Court addressed the relation back doctrine in *Gasbarini, supra.* The decedent in that case had died on June 26, 1973, while a patient in the defendant hospital under the care of the defendant physicians. His widow promptly applied for letters of administration but was not issued them because her counsel failed to post bond. On September 26, 1973, counsel commenced an action in trespass by writ of summons identifying the plaintiff as "Estate of Gabriel C. Gasbarini." When counsel failed to respond to the defendant hospital's rule to file a complaint, a judgment of non pros was entered.

Counsel filed a second summons on June 20, 1974, again naming the estate as plaintiff. This was followed on November 15, 1974, by a complaint which named the estate as plaintiff in the caption and which asserted wrongful death and survival actions. The defendants filed preliminary objections alleging that the estate was not a proper party. Counsel did not respond to the preliminary objections; he was subsequently suspended from the practice of law and then disbarred. On January 31, 1975, the trial court sustained the preliminary objections and dismissed the complaint.

In July 1975 the plaintiff was able to secure new counsel. She posted bond, was named administratrix of the estate, and petitioned to reinstate the complaint and to amend its caption. On January 29, 1976, the trial court ordered that its judgment in favor of the defendants be opened and that the plaintiff be granted leave to file an amended complaint. The Superior Court reversed the trial court, and the plaintiff appealed to the Supreme Court.

With regard to the defendants' argument that permitting the plaintiff to amend the complaint would improperly add a new party to the proceedings, the Supreme Court reasoned as follows:

> In the instant case, appellant had taken all necessary steps to be appointed administratrix of decedent's estate except posting the required bond, and this omission was clearly the fault of [counsel]. Further,

paragraph 9 of the complaint in trespass alleged: "Plaintiff is the widow and was duly appointed administratrix of [the decedent's] estate by the Register of Wills of Beaver County, Pennsylvania. . . ." It is clear that allowing amendment of the caption in no way adds a new party to the suit.

*Id.,* 487 Pa. at 271–72, 409 A.2d at 346 (citation omitted). The Court also found no merit in the defendants' argument that amendment of the complaint would deprive them of a meritorious statute of limitations defense.

> The original complaint . . . made clear that the action was based upon our wrongful death and survival statutes. Further, as previously mentioned, the complaint made clear that appellant was bringing this action in her capacity as administratrix of the decedent's estate.

. . .

> We believe the instant case is on all fours with *McGuire* and we believe its reasoning is persuasive. Instantly, the only deficiency in appellant's complaint was the fact she had not yet been named administratrix of decedent's estate. All other requirements, however, had been completed within a short time period after decedent's death and within the applicable statute of limitations for either a wrongful death or survivor action. As we believe the appointment of appellant as administratrix should relate back to the . . . date on which the complaint was filed, we find that neither action is barred by the applicable statute of limitations.

*Id.,* 487 Pa. at 272–73, 409 A.2d at 346–47. Accordingly, the Supreme Court reversed the order of the Superior Court and reinstated the order of the trial court.

In *Lesho, supra,* the relation back issue arose in the context of proceedings before the Arbitration Panels for Health Care. The plaintiffs, whose daughter had died allegedly as the result of medical malpractice, filed a complaint identifying themselves in the caption and body of the complaint as administrators of the decedent's estate. In fact, however, they did not apply for and were not granted letters of administration until after

the statute of limitations had expired. The defendants moved for summary judgment on that basis. Their motion was denied by the Administrator of the Arbitration Panels for Health Care, who ruled that the relation back doctrine applied. His order was certified as involving a controlling question of law, and the Commonwealth Court allowed the defendants to take an interlocutory appeal from that order.

■ On appeal, the defendants argued that there was a critical difference between *McGuire* and its progeny and the case in which they were involved: "in each of those cases the administrator had at least **applied** for letters before the statute ran and there was a substantial assurance that the letters would be granted to the person alleging his or her fiduciary capacity in the pleading." *Id.,* 62 Pa.Commw. at 226, 435 A.2d at 1342 (emphasis supplied in original). Nevertheless, the Commonwealth Court affirmed, concluding that the reasoning of *McGuire* and *Gasbarini* was applicable to the case before it.[7]

> Absolutely nothing was changed in the Leshos' complaint by virtue of letters of administration having been granted to them after the statute of limitations had run. From the time the original complaint was filed, the Petitioners were aware that they were being sued for their alleged negligence resulting in the death of a named decedent. Every element necessary to establish the two causes of action [wrongful death and survival] against the Petitioners was set forth in the complaint, including the erroneous fact that the Leshos had been appointed administrators of their daughter's estate. . . . At the very least, the fact that both parents had been petitioners in that proceeding would discount the possibility of a renunciation by one of them, such as occurred in *Lovejoy, supra.*
>
> In any event, it is our opinion that by permitting the doctrine to apply to the circumstances of this case, the acts of the administrators will have been validated, a

just result will have been achieved, the estate will have been benefited and a remedy will not have been lost. Neither will the objectives of the statute of limitations have been disturbed.

*Id.,* 62 Pa.Commw. at 228, 435 A.2d at 1343.

Appellant contends that he too is entitled to the benefit of the relation back doctrine because, as in *McGuire* and its progeny, "[a]bsolutely nothing was changed in the present action by virtue of the executor being formally appointed after the statute [of limitations] had expired." We disagree.

In *McGuire, D'Orazio,* and *Lesho,* a survival action was commenced by the timely filing of a complaint the caption of which identified the plaintiff by name as the administrator of the decedent's estate. In *Gasbarini,* a survival action was commenced by the timely filing of a complaint the caption of which named the decedent's estate as the plaintiff, but the body of which explained that the plaintiff was in fact the administratrix of the estate. In each case the designation of the plaintiff as administrator/administratrix was premature, as certain steps remained to be taken which were not accomplished until after the statute of limitations had run. In all four cases, however, the defendants were notified, **before the statute of limitations had run,** of the fact that an action had been filed against them by a named individual who was, at least putatively, the personal representative of the decedent's estate. Insofar as the commencement of the action was concerned, nothing remained to be done after the limitations period had expired but to formalize the plaintiff's previously asserted appointment as personal representative.

That is not true in the present case. The writ of summons was the only document filed before the limitations period expired, and its caption identifies the estate of the decedent as the plaintiff. Such a writ is, of course, a nullity. Moreover, the writ does not identify the executor of the estate, nor does it inform the defendants that there is, even potentially, an executor (that is, that the decedent died

---

7. The decisions of the Commonwealth Court are not binding upon us. *Johnson v. Singleton,* 442 Pa.Super. 206, 658 A.2d 1372 (1995). We may consider them for their persuasive value, howeverer.

testate). Concerning the parties' relationship, these facts evidence "the sort of instability that statutes of limitation seek to preclude." *McGuire, supra.*

Appellant has cited no case, and we are aware of none, in which the relation back doctrine was applied to ratify, post-appointment, the attempted commencement of an action by a personal representative whose existence was in no way suggested by the pleading that he filed. We decline to extend the doctrine to encompass such a situation. Accordingly, we affirm the trial court's order dismissing the complaint.

Order affirmed.

SCHILLER, J., files a concurring opinion.

CIRILLO, P.J.E., files a dissenting opinion which is joined by KELLY, J.

FORD ELLIOTT, J., files a dissenting opinion.

SCHILLER, Judge, concurring.

Although, I agree that the trial court was correct in sustaining defendants' preliminary objections, I disagree with the scope of the Majority Opinion and for that reason I am compelled to write separately.

Judith A. Bills was at one time during her life a patient in the hospital known as Northwest Medical Center—Oil City Campus, and was treated by Robert M. Pilewski, M.D. (hereinafter referred to as appellees). The last treatment Ms. Bills received from appellees was October 15, 1992. Unfortunately, Ms. Bills died on June 12, 1994, from causes unrelated to the medical treatment supplied by appellees.

On September 8, 1994, a praecipe for writ of summons was filed in the Court of Common Pleas of Venango County with the fol-

lowing caption: Estate of Judith A. Bills, Deceased, v. Northwest Medical Center—Oil City Campus and Robert M. Pilewski, M.D. Upon this application, the writ of summons was issued and duly served upon the appellees. Service was effected on September 9, 1994. In response appellee, on October 3, 1994, Northwest Medical Center—Oil City Campus filed a praecipe for a Rule Upon plaintiff to file a Complaint. This praecipe contained the same caption as the writ of summons. Upon this application the Prothonotary of Venango County issued on October 5, 1994, a Rule to file a Complaint. This Rule was issued upon the "plaintiff" as described in the Writ of Summons. We note that the Rule issued by the Prothonotary was issued at least ten days prior to October 15, 1994, which was the expiration of the statute of limitations (assuming the statute commenced on the last day of Ms. Bills' treatment).[1]

On November 18, 1994, thirty-three days after the statute of limitations had presumptively expired, sixty-eight days after the writ of summons was issued, and one hundred fifty-eight days after Ms. Bills died, a Complaint in trespass was filed with the following caption: "Thomas D. Prevish, Executor of the Estate of Judith A. Bills, Deceased, v. Northwest Medical Center—Oil City Campus and Robert M. Pilewski, M.D."[2] To this Complaint both appellees timely filed preliminary objections asserting that the Complaint violated Pa.R.A.P. 1033 by amending the caption without having "consent of the adverse party or by leave of court." Appellant filed answers to both sets of preliminary objections asserting first, that the failure to obtain "leave of court or consent of counsel" prior to amending the caption "does not require dismissal of plaintiffs' suit;"[3] and second, that "an amendment adding the name of the personal representative to a timely filed survival action is not in violation of the Pennsylvania

---

1. Defendants' actions in seeking the filing of the Complaint before the expiration of the statute of limitations augurs against any finding that defendants acted in a bad faith attempt to take advantage of the Writ's misidentification of the plaintiff.

2. It is unclear on this record exactly when Thomas D. Prevish applied for letters testamentary or when they were issued.

3. Plaintiffs' Answer to Preliminary Objections of the Defendants, Northwest Medical Center—Oil City Campus to Plaintiffs' Complaint.

Rule of Civil Procedure 1033."[4] Nowhere in the answers filed by appellant was leave of court sought to amend the caption. Instead, appellant elected to defend the state of the record as it existed at the time of the filing of the preliminary Objections. Thereafter oral argument was held before the trial court, which ultimately sustained appellees preliminary objections and struck the Complaint.

In its opinion in support of its Order, the trial court, in a well intentioned attempt to effect judicial economy, extended its discussion beyond the record as it existed. This occurred when the court, after having agreed with appellees' asserted objection, went beyond that objection and stated: "The paramount issue is thus whether the plaintiffs' caption amendment in the Complaint is permissible pursuant to Rule 1033." This statement of the issue went beyond the relief sought, since appellant had merely attempted to defend its prior action as being error-free, and never asked for an amendment to the caption. Unfortunately, the phrasing of the issue in this manner started this case down the track which ultimately created the problem we now have before us: i.e. the effect if any of the Probate Code, specifically section 3376, on the statute of limitations where a plaintiff is deceased at the time of the commencement of the cause of action.[5] Had the trial court merely struck the complaint for failure to comply with Rule 1033, appellant

would have been able to appeal this decision to this Court on the sole issue raised by the preliminary objections, or would have been able to refile the Complaint as a new cause of action thereby triggering appellees' assertion of the statute of limitations as an affirmative defense. Such a defense would have been permitted as New Matter under the Rules and would have allowed the development of the record below in a more orderly fashion.[6]

Thus, because of this procedural posture, certain issues that could be relevant to a full resolution of this case cannot be addressed at this time. As a consequence I would limit our review to the only issue which is properly before us: whether plaintiff amended the caption of the complaint without prior consent of the defendant or the permission of the trial court. The answer to this question is unquestionably yes. As such the trial court properly ruled that the Complaint should be dismissed, and that Order should be affirmed. To this degree I agree with the decision of the Majority.[7]

However, despite my opinion that the Complaint was properly dismissed, in the interest of justice[8] I would consider that Complaint, in which the plaintiff is correctly identified, as tolling any subsequent time period. I would therefore permit it to be refiled and evaluate the statute of limitations question as of the date of the original file

---

4. Plaintiffs' Answer to Preliminary Objections of the Defendant, Robert M. Pilewski, M.D. to Plaintiffs' Complaint.

5. Section 3376 of the Probate and Estates Code provides:

> Any statute of limitation which would bar any debt or liability otherwise of a decedent within on year after the decedent's death shall be extended until the end of one year following the decedent's death. Failure or delay in taking out letter testamentary or of administration shall not affect the operation of any statute of limitation applicable to a debt or liability owed the estate of a decedent.

20 Pa.C.S. § 3376.

6. It is important to emphasize that plaintiff never raised the issue of the statute of limitation in responses to the preliminary objections filed by the appellees. In fact the statute of limitations issue was not raised until the plaintiff filed its application for reconsideration of the order sustaining the preliminary objections: in that appli-

cation plaintiffs even argued that the alleged expiration of the statute of limitations "was not a matter raised by the defendant's Preliminary Objections" (Application for Reconsideration). Moreover, it was not until this application for reconsideration that plaintiffs finally sought an amendment of the caption; however, because plaintiff had filed this appeal the trial court never ruled on this application. Therefore, the only Order before this Court is the decision of the trial court sustaining the preliminary objections, and dismissing the Complaint based on the violation by plaintiff of Pa.R.Civ.P. 1033.

7. I also agree with the Majority that appellant's attempt to obtain relief on the basis of the doctrine of "relation back" is unavailing because application of that doctrine is limited to situations where the action was originally brought by a legal entity. See Thompson v. Peck, 320 Pa. 27, 30, 181 A. 597, 598 (1935); Marzella v. King, 256 Pa.Super. 179, 183, 389 A.2d 659, 660 (1978).

8. See Pa.R.Civ.P. 126.

date of that Complaint. *See D'Orazio v. Locust Lake Village, Inc.,* 267 Pa.Super. 124, 126, fn. 1, 406 A.2d 550, 551, fn. 1. (1979).[9]

For the above stated reasons I concur in the result.

CIRILLO, President Judge Emeritus, dissenting:

I cannot agree with the conclusion the majority has reached today; it has sacrificed common sense for the sake of hypertechnicality. Specifically, I must take umbrage with the majority's conclusion that section 3376 of Pennsylvania's Probate, Estates and Fiduciaries Code is inapplicable to causes of action. *See* 20 Pa.C.S.A. 3376. I must, therefore, respectfully dissent.

Section 3376 provides:

Any statute of limitations which would bar any **debt or liability owed the estate of a decedent after the decedent's death shall be extended until the end of one year following the decedent's death.** Failure or delay on taking out letters testamentary or of administration shall not affect the operation of any statute of limitation applicable to a debt or liability owed the estate of a decedent.

20 Pa.C.S.A. § 3376 (emphasis added).

The majority has concluded that appellant's cause of action is not a "debt or liability" and, therefore, section 3376 is of no avail. I cannot agree. The term "liability," as the majority concedes, is a term that carries a broad legal definition. Blacks Law Dictionary defines "liability" as follows:

The word is a broad legal term. It has been referred to as one of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent, or likely ... an obligation which may or may not ripen into a debt; any kind of debt or liability, either absolute or contingent, express or implied ... condition of being actually or potentially subject to an obligation; condition of

being responsible for a possible or actual loss, penalty, evil, expense, or burden; ... responsibility for torts; ... unliquidated claim.

*Blacks Law Dictionary,* 823 (5th ed. 1979). Given this broad and encompassing meaning of the term "liability" within our jurisprudence, I am convinced that Judith Bill's medical malpractice cause of action is a "liability owed" to her estate, and, therefore, section 3376 acts to extend the statute of limitations one year from her death. Words and phrases of a statute are to be construed according to their common meaning and accepted usage. *See* 1 Pa.C.S.A. § 1903. By narrowly construing the definition of "liability" today, the majority has forsaken this time-worn principle under the pretext of pursuing, what it feels, is the spirit of the statute. The majority has cited no case law nor has my independent research uncovered any court in this Commonwealth that has utilized the term "liability" in such a restrictive manner.

Section 3376 does not explicitly define "liability," however, when the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering: the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied and the object to be attained, the consequences of a particular interpretation, and the contemporaneous legislative history. 1 Pa.C.S.A. § 1921(c).

Although there is no legislative history from which we may glean the intention behind section 3376, the official comment to section 3376 explains that the statute was modeled after section 3–109 of the Uniform Probate Code (UPC). *See* 20 Pa.C.S.A. § 3376, Cmt. Section 3–109 of the UPC acts to extend a statute of limitations on causes of action to four months after a decedent's death if the statute of limitations applicable to the particular cause of action had not yet

---

**9.** Appellees would still be permitted to raise the issue of the statute of limitations in New Matter, and plaintiffs could file a reply thereto asserting the discovery issue. This could permit the trial

court to make a factual determination on whether plaintiff is entitled to relief and would permit more effective appellate review. In addition, the

expired upon the death of the decedent.[1] Section 3-109 was promulgated to recognize that the appointment of executors and administrators is not an overnight endeavor. *See Mackle v. Mackle*, 389 So.2d 1081 (Fla. App. 3 Dist.1980) (explaining that the sole effect of statute providing for suspension of statutes of limitation is to benefit estate by suspending and elongating period in which personal representative may commence action as to which pertinent limitations period would have expired). I believe that in enacting section 3376, our legislature also considered the time constraints involved in the appointment of executors and administrators and, accordingly, intended to extend the statute of limitations one year beyond the date of a decedent's death.

I am also guided by section 3383 of our state's Probate, Estates and Fiduciaries Code. That provision serves to extend the statute of limitations for claims against a person who has died, to one year following the death of that person. 20 Pa.C.S.A. § 3383.[2] *See Longo v. Estep*, 289 Pa.Super. 19, 21, 432 A.2d 1029, 1030 (1981) ("the clear intent of the statute is to extend the statute of limitations in cases where the normal statute of limitations would run within a year after a defendant's death, so that the statute of limitations would not then expire until one year after death"). Surely, the legislature did not intend to give the living extra time to file suit against the dead and in the same breath prevent a decedent's representative from gaining time to sue the living.

In *Longo v. Estep, supra,* a plaintiff brought an action for personal injuries against a defendant arising out of an automobile accident. The accident occurred on April 2, 1977, and the defendant died on March 23, 1979. At the time defendant had

died, no action had been commenced. Our court held that because the defendant had died prior to the running of the statute of limitations, section 3383 acted to extend the statute one year from defendant's death, thus allowing plaintiff one year after defendant's death to file an action against the defendant's representative. *Longo*, 289 Pa.Super. at 21, 432 A.2d at 1030. Under the majority's interpretation of section 3376, if the plaintiff had died instead of the defendant, plaintiff's representative would not be entitled to a one year extension. Accordingly, his claim would be barred. Such a result is an absurd interpretation of section 3376. There is no reasonable explanation to justify such an inequity. *See* 1 Pa.C.S.A. § 1922(1) (we should not interpret a statute, the result of which would be "... absurd, impossible of execution or unreasonable.").

The folly of the majority's holding is illustrated by the facts of the present case, precisely the situation I believe the legislature was trying to protect in enacting section 3376. Judith Bills was treated at the Northwest Medical Center by Dr. Robert Pilewski for bacterial meningitis from September 11, 1992 until October 15, 1992. As a result of this illness Ms. Bills suffered a debilitating stroke that resulted in paralysis. Ms. Bills, however, did not die until June 12, 1994. Assuming that the statute of limitations began to run on the last date of treatment, there were less than three months in which an action could have been filed prior to the running of the statute as of the date of her death.[3] Practically, then, there remained only three months to appoint a personal representative, who, after appointment, had to commence an action in addition to performing numerous other duties. It is patently

---

statutory argument which appellant here argues would still be available.

**1.** Section 3-109 of the UPC provides in relevant part:

> No statute of limitation running on a cause of action belonging to a decedent which had not been barred as of the date of his death, shall apply to bar a cause of action surviving the decedent's death sooner than four months after death.

U.P.C. § 3-109 (1983).

**2.** Section 3383 provides:

> [t]he death of a person shall not stop the running of the statute of limitations applicable to any claim against him, but a claim which otherwise would be barred within one year after the death of the decedent shall not be barred until the expiration of one year after his death. 20 Pa.C.S.A. § 3383.

**3.** Because Ms. Bills' action was one for personal injury, the action was subject to the two-year statute of limitations. 42 Pa.C.S.A. § 5524.

unreasonable and inequitable to assume that all these events could take place in such a short period of time. In fact, in this case, Thomas Prevish was appointed executor on November 8, 1994, after the statute of limitations had expired. Under the majority's interpretation, he is unable to commence a lawsuit at all and Ms. Bills estate's rights would be forever lost. If, however, section 3376 were applied to extend the statute of limitations one year following Ms. Bills' death, Thomas Prevish would have had until June 12, 1995 to timely file an action. Because Mr. Prevish commenced this action on November 8, 1994, within the one year period extension, according to my interpretation of section 3376, he clearly commenced a timely action. I believe that the legislature intended to protect against such cases and, therefore, conclude that "liability owed" includes causes of action that have accrued. I would, therefore, reverse and reinstate appellant's complaint.

KELLY, J., joins.

FORD ELLIOTT, Judge, dissenting:

I respectfully dissent.[1] I believe that the "relation back" doctrine applies to the facts of this case.

The relevant facts of this case for purposes of the relation back doctrine are as follows. The events giving rise to the survivorship cause of action took place, at latest, on October 15, 1992. The decedent died on June 12, 1994, leaving a duly-probated will naming appellant Prevish as executor of the estate. (Appellant's brief at 4.) The two-year statute of limitations on survivorship actions (*see* 42 Pa.C.S.A. § 5524) expired on October 15, 1994. Within the statute of limitations period, on September 8, 1994, a writ of summons was filed, naming as plaintiff "the Estate of Judith A. Bills, Deceased." (R.R. 1a.) On October 5, 1994, defendants caused to be issued a Rule to File Complaint. (R.R. 3a.) On October 11, 1994, plaintiff's counsel and

counsel for Appellee Northwest Medical Center ("NWC") agreed to waive the requirement that plaintiff file a complaint within 20 days of October 5, 1994. (R.R. 47a.) After further discussions, of the matter and not on the identity of the estate's executor, counsel for NWC requested that Plaintiff's counsel file a complaint by November 21, 1994. (R.R. 48a, 49a.) On November 15, 1994, Prevish was formally named executor of the estate. (R.R. 7a.) On that date, Prevish filed a complaint adequately setting forth a survivorship cause of action against defendants, and correctly stating that Prevish had been named executor of the estate. *Id.* Under these facts, I would conclude that the complaint should relate back to the date of the timely-but-defective writ.

"Suits by or against an estate must be brought by or against the personal representative of the estate. Simply stated, the doctrine of relation back as applied to cases where an estate is a party means that the courts under certain circumstances will validate the acts of the personal representative of the estate which preceded the date of his official appointment." *Wilkes–Barre General Hosp. v. Lesho,* 62 Pa.Cmwlth. 222, 225, 435 A.2d 1340, 1342 (1981). Our task is to determine whether, under all of the circumstances of the case, applying the relation back doctrine will achieve a just result. *McGuire v. Erie Lackawanna Railway Co.,* 253 Pa.Super. 531, 535–36, 385 A.2d 466, 468 (1978); *D'Orazio v. Locust Lake Village, Inc.,* 267 Pa.Super. 124, , 406 A.2d 550, 552 (1979); *Estate of Gasbarini v. Medical Ctr. of Beaver,* 487 Pa. 266, 409 A.2d 343, 346 (1979); *Lesho, supra.* Our focus should be on this overriding issue, not any specific test. *See Lesho, supra* at 227, 435 A.2d at 1343 (test is not whether application for letters testamentary were filed before the statute of limitations expired). We should apply the doctrine where, under all of the circumstances, "the acts of the administrators will have been

---

1. I join fully in the reasoning of Judge Cirillo's Dissenting Opinion as to the intended effect of Section 3376 of the Probate Code, 20 Pa.C.S.A. I would add that because it extends statutes of limitations, Section 3376 must necessarily apply to causes of action. However, I have serious concerns as to whether the Section 3376 issue

has been properly preserved on appeal. Appellant Prevish first presented the Section 3376 issue on a petition for reconsideration before the trial court. Moreover, the trial court did not rule on the issue before Prevish appealed to this court. Therefore, I believe it is improvident for us to address it here.

validated, a just result will have been achieved, the estate will have been benefited, [ ] a remedy will not have been lost [, and] the objectives of the statute of limitations [will not] have been disturbed." *Id.*

Statutes of limitations are designed to expedite litigation and discourage stale claims, thereby promoting finality and stability. *McGuire, supra.* However, it is also hornbook law that a party may commence an action in this Commonwealth by filing a writ §§ 1007(1), 1351, 42 Pa.C.S.A. The filing of this writ tolls the statute of limitations and is considered sufficient evidence that the party instituting the action is not bringing a stale claim. *Anderson v. Bernhard Realty Sales Co., Inc.,* 230 Pa.Super. 21, 329 A.2d 852 (1974). So long as a timely writ was filed, it is plainly not "an unjust result" for a defendant to receive (after the statute of limitations would have otherwise run) a complaint spelling out the facts, legal theories, causes of action, and relief sought. I cannot agree, therefore, that it is an unjust result for a defendant to learn for the first time, in such a post-writ complaint, that appellant had been named executor of the estate.

Our supreme court recognized this principle in *Gasbarini, supra.* Unlike the majority, I read the facts of *Gasbarini* as describing a case quite similar in all relevant respects to the instant matter. In *Gasbarini,* decedent died on June 26, 1973. Within the statute of limitations period, on June 20, 1974, appellant's counsel commenced an action in trespass by filing a writ of summons. *Id.* at 269, 409 A.2d at 344. The writ, as here, named only the decedent's estate as plaintiff. *Id.* As here, defendants issued a rule to file a complaint. *See Estate of Gasbarini v. Medical Center of Bea-*

ver, 253 Pa.Super. 547, 548–49, 385 A.2d 474, 475 (1978) (superior court opinion). Later, in October or November of 1974,[2] the complaint was filed. The complaint alleged *wrongful death and survivorship* causes of action and alleged that Gasbarini was the duly appointed administratrix of the estate. *Gasbarini, supra* at 273, 409 A.2d at 346 (supreme court opinion). Gasbarini's letters testamentary had not actually issued at the time of the complaint, because appellant's counsel failed to post a bond. *Id.* Defendants then filed preliminary objections, alleging that since letters testamentary had not yet actually been issued, the statute of limitations had effectively run. *Id.; see also* 385 A.2d at 475 (superior court opinion).[3]

The supreme court, citing *McGuire, supra,* disagreed and found that the complaint and the appointment of the executrix would relate back to the date of the timely-but-defective writ.[4] *Id.* at 271–73, 409 A.2d at 346–47. In *Gasbarini,* the court ruled that the complaint gave defendants effective notice that "the action was based on our wrongful death and survival statutes," and that "appellant was bringing this action in her capacity as administratrix of the decedent's estate." *Id.* at 272, 409 A.2d at 346. The court also forgave Gasbarini for not having been actually named executrix at the time the complaint was filed, as she had applied for the letters within the statutory period and the delays in receiving the letters had been the fault of her counsel. *Id.*

I find the *Gasbarini* analysis persuasive in the instant case. As in *Gasbarini,* Prevish's post-writ complaint gave defendants notice that the action was brought (1) pursuant to the survivorship statutes, and (2) in Prevish's

**2.** The superior court opinion, 385 A.2d at 475, states that the complaint was filed on October 15, 1974. The supreme court opinion, 409 A.2d at 344, states that the complaint was filed on November 15, 1974.

**3.** I assume that the statute of limitations had run on June 20, 1974, five days after plaintiff filed the June 15, 1974, writ of summons.

**4.** On this point, the supreme court opinion reads: "As we believe the appointment of appellant as administratrix should relate back to the June 20, 1974 date on which the *complaint* was filed, we

believe that neither action was barred by the applicable statute of limitations." *Gasbarini, supra* at 273, 409 A.2d at 346–47. From our reading of the facts of the supreme court opinion and the superior court's opinion in the same case, it is clear that plaintiff had only filed a writ of summons on June 20, 1974. Moreover, it would be anomalous at best for defendants to have requested in October 1974 a writ to file a complaint if a complaint had already been filed in June. Thus, I conclude that plaintiff first filed her *complaint* in November 1974, after the statute of limitations had expired.

capacity as executor of the estate. Moreover, unlike *Gasbarini,* in the instant case Prevish actually *was* formally named executor of the estate at the time of the filing of the complaint. In this respect the instant case is even more worthy of an application of the relation-back doctrine than *Gasbarini.*

Thus, I cannot agree with the majority that "in all four cases [*McGuire, D'Orazio, Lesho,* and *Gasbarini*], the defendants were notified, before the statute of limitations had run, of the fact that an action had been filed against them by a named individual who was, at least putatively, the personal representative of the decedent's estate." My reading of *Gasbarini* compels me to conclude that the defendants there (as here) first knew of the estate representative's identity *after* the statute had run. Pursuant to *Gasbarini,* I would apply the relation-back doctrine.

I disagree with the majority's conclusion that the facts of this case "evidence 'the sort of instability that statutes of limitation seek to preclude.'" Majority opinion at 204, *citing McGuire, supra.* I find that this asserted "uncertainty" is far more theoretical than real. Even though defendants did not know the executor's identity when the *writ* was filed, they did know this fact (and all other relevant aspects of the cause of action) by the time the *complaint* was filed. *Compare Lovejoy v. Georgeff,* 224 Pa.Super. 206, 303 A.2d 501 (1973), *cited in McGuire, supra* at 538, 385 A.2d at 469 (no relation back in part because the identity of the administrator of the estate was uncertain at the time of the filing of the complaint).

Moreover, I see no evidence that defendants were prejudiced in any way here. From my reading of the correspondence between counsel after the writ was filed, there was no uncertainty about the fact that a case was going forward against defendants. In short, I see no reason in this case not to "validate the acts of the personal representative of the estate which preceded the date of his official appointment." *Lesho, supra* at 225, 435 A.2d at 1342.

For these reasons, I respectfully dissent.