J-A27011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHANNA SWART AND MADELEINE HEYNS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | No. 387 MDA 2023 |
| UPMC PINNACLE HOSPITALS, ORTHOPEDIC INSTITUTE OF PENNSYLVANIA AND RONALD W. LIPPE, MD | : | |

Appeal from the Judgment Entered February 10, 2023
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2020-CV-10091-MM

BEFORE: LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: APRIL 22, 2024**

Appellants Johanna Swart and Madeleine Heyns appeal from the order granting summary judgment in favor of Appellees University of Pittsburgh Medical Center Pinnacle Hospitals (UPMC), Orthopedic Institute of Pennsylvania (OIP), and Ronald W. Lippe, M.D (Dr. Lippe). Appellants argue that the trial court erred in concluding that the applicable statute of limitations had expired. We reverse and remand for further proceedings consistent with this memorandum.

The trial court summarized the relevant facts and procedural history of this matter as follows:

---

[*] Former Justice specially assigned to the Superior Court.

On October 9, 2020, [Appellants] initiated this action by filing a writ of summons against [Appellees]. They later filed a complaint sounding in medical negligence, in which the asserted that [] Swart underwent her first total right hip replacement surgery November 17, 2015, performed by [] Dr. Lippe of [OIP] at [UPMC]. [Appellants] allege Dr. Lippe used implants of an improper length. On December 21, 2016, Dr. Lippe treated [Swart] for continued pain and conducted a right hip aspiration. At that time, [Swart's] pain was worse with activities, standing and walking was difficult, that she was at the point that she could barely work, that her range of motion was decreased and that she was walking with a walker. Dr. Lippe diagnosed her with having a loose femoral component and that she needed a second total right hip replacement surgery. [Swart] understood this to mean that Dr. Lippe would be putting in a longer stem.

On January 17, 2017, Dr. Lippe preformed a second total hip replacement surgery at [UPMC], allegedly failing to correct [Swart's] leg length discrepancy. [Swart] complained post-surgery that her right leg was still shorter than her left leg and that Dr. Lippe refused to address her concerns or measure her legs. [] Swart further pled:

68. On or around December 4, 2017, [Swart] was fed up with being in pain almost constantly for two years since her first hip surgery by Dr. Lippe in 2015. So her primary physician referred her to Dr. Curran at OSS Health. He documented in his report that [Swart] was experiencing instability of her leg, her femoral head had collapsed, that she still uses a cane, and that her legs were two different lengths. He referred her to Dr. Margetas at his practice.

71. On or around January 3, 2018, Dr. Margetas from OSS Orthopedic Health . . . treated [Swart] who told him that she could no longer deal with the pain and that she was experiencing numbness and tingling and weakness in her hip and thigh. He confirmed that her legs were different lengths which caused her limping[.]

72. On or around January 3, 2018, [Dr.] Lippe treated [Swart] and upon her desperate request and her telling him that Dr. Margetas agreed with her, [Dr.] Lippe finally measured her leg lengths and agreed that there was a discrepancy in the lengths. He prescribed her to get a ¼ inch shoe lift. This was the first time after the last surgery

that [Dr.] Lippe asked to see her walk. The last time he did this was right after her first surgery.

79. On or around July 9, 2018, [Swart] was treated by orthopedic doctor, Hennie Bosch. He diagnosed her with a loose femoral stem with unequal leg lengths. He documented that the tip of the greater tuberosity[,] which [Dr.] Lippe inserted was quite high[,] which will cause the abductors not to function properly [and] subsequently present a shorter leg.

81. On or around October 10, 2018, [Swart] underwent her third hip replacement surgery. This time the surgery was conducted by Dr. Joseph Alhadeff from OSS. He used a different system than [Dr.] Lippe. He reported that during surgery her femoral components were so loose that it lifted out easily and quickly.

86. Diagnostics after the first two surgeries visually show the neck of stem Dr. Lippe implanted was too short and made her legs uneven; yet [Dr.] Lippe failed to ever address this on his own.

In Counts 1, 2 and 3, [] Swart asserted a claim against each of the three [Appellees], respectively, for medical negligence, including claims against the corporate [Appellees] based upon vicarious liability and/or respondeat superior. In Counts 4, 5 and 6, [] Heyns asserted a claim for loss of consortium against each of the three [Appellees].

After preliminary objections were resolved, the [Appellees] Dr. Lippe and OIP, and [UPMC], separately, raised as affirmative defenses that [Appellants'] claims were barred by the two-year statute of limitations applicable to personal injury claims. 42 Pa. C.S. § 5524(2). After the pleadings were closed, the parties conducted discovery. On November 18, 2022, [Appellees] filed a joint motion for summary judgment and a brief in support, seeking dismissal of [Appellants'] action as having been filed beyond the two-year statute of limitations. [Appellants] filed a response and brief in opposition on December 27, 2022. After [Appellees] filed a reply brief, this court held oral argument. Following argument, this court granted summary judgment in [Appellees'] favor, issuing the following:

- 3 -

ORDER

AND NOW, this 10th day of February 2023, with the benefit of briefs and oral argument, [Appellees'] joint motion for summary judgment . . . based on the statute of limitations is GRANTED.

Recognizing that summary judgment is a drastic remedy to be granted only in the clearest cases, resolving all (if any) doubt in favor of denying summary judgment and viewing the evidence in a light most favorable to [Appellants], the court finds no genuine issue of material fact regarding the statute of limitations and timeliness of the writ of summons by which this matter was initiated. This is the clearest case.

It is not disputed that [Appellants] initiated this matter more than two years after the date of [] Swart's alleged injury and that [Appellants] rely upon the discovery rule exception to permit their action to proceed. The court will resist the temptation to find, as a matter of law, that [] Swart had actual knowledge of her injury and its precise cause well before October 10, 2018, as that need not be the focus of our analysis. In evaluating the timeliness of this matter, the court must apply the objective, inquiry notice standard and rejects the definitive diagnosis standard upon which [Appellants'] counsel relies, by which [Appellants] argue that the statute did not begin to run until October 10, 2018. The court finds, as a matter of law, that through the exercise of reasonable diligence, the injury and its cause were apparent to [] Swart and that the [Appellants] failed to initiate suit within the prescribed period.

Summary judgment is thus entered in favor of [Appellees] on all claims pled against them. [] Swart's direct claim and [] Heyns' derivative claims are DISMISSED, with prejudice.

Trial Ct. Op., 5/3/23, at 1-4 (formatting altered and footnote omitted).

Appellants filed a timely appeal, and both the trial court and Appellants complied with Pa.R.A.P. 1925.

On appeal, Appellants present the following issue:

Whether the trial court erred in granting Appellees' joint motion for summary judgment based on the statute of limitations filed pursuant to Pa.R.C.P. 1035.2(1)?

Appellants' Brief at 7 (formatting altered).

Appellants argue that the trial court erred in concluding that the statute of limitations had expired and granting summary judgment in favor of Appellees. Appellant's Brief at 15. Appellants contend that when the record is viewed in the light most favorable to them as the non-moving party, genuine issues of material fact exist as to whether Appellants knew or should have known that Swart's injuries were caused by Appellees more than two years prior to the date they filed their writ of summons on October 9, 2020. *See id.* at 15-16. In support, Appellant Swart alleged that she was in pain, but she continued to treat with Appellee Dr. Lippe who repeatedly assured Swart that her complaints were extended results of her surgery. *See id.* at 20. Subsequently, in July of 2018, Appellant Swart saw Dr. Bosch in South Africa. Dr. Bosch did not testify. Swart relayed that, Dr. Bosch noted that Swart had a leg-length discrepancy, and he equivocally stated that Swart's femoral stem may have been inserted too high. *See id.* at 20-21. However, Appellants assert that Dr. Bosch did not state or suggest that the condition of Swart's hip was due to a medical mistake by Dr. Lippe, and Dr. Bosch did not conduct any imaging or procedures to confirm his position. *See id.* at 20-21. Appellants argue that it was not until Dr. Alhadeff performed surgery on October 10, 2018, and confirmed the existence of grossly loose femoral components as the cause of Swart's pain and disability. *See id.* at 20. Appellants contend

that there is a genuine issue of material fact concerning whether Swart was on inquiry notice prior to Dr. Alhadeff's surgery on October 10, 2018.[1]  **_See id._** at 17-22.  Accordingly, Appellants argue that their writ of summons, which was filed on October 9, 2020, was filed within two-years from the date Appellants discovered the injury on October 10, 2018.  **_See id._** at 23-26.

Appellee OIP/Dr. Lippe argues that summary judgment was proper as there is no genuine issue of material fact that Appellants' claims are barred by the two-year statute of limitations set forth in 42 Pa.C.S. § 5524(a)(2).  **_See_** Appellees' Brief (OIP/Dr. Lippe) at 30-31.  Appellee OIP/Dr. Lippe contends that Swart had actual knowledge as well as constructive notice of a causal injury by July of 2018 at the latest when she treated with Dr. Bosch.  **_See id._** at 34.  Similarly, Appellee UPMC argues that Appellants were informed that Swart had a loose femoral stem and a leg-length discrepancy by Dr. Bosch, at the latest, on July 9, 2018.  **_See_** Appellees' Brief (UPMC) at 42.  Alternatively, both Appellee UPMC and Appellee OIP/Dr. Lippe assert that Appellants waived application of the discovery rule because they failed to raise it and plead facts in support.  **_See id._** at 45; Appellees' Brief (OIP/Dr. Lippe) at 52.

Our standard of review of an order granting or denying summary judgment is as follows:

---

[1] Appellants further assert that they could not have obtained a certificate of merit pursuant to Pa.R.C.P. 1042.3, prior to Dr. Alhadeff's surgery on October 10, 2018.  **_See_** Appellants' Brief at 20-21.

When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. Because the claim regarding whether there are genuine issues of material fact is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*Nicolaou v. Martin*, 195 A.3d 880, 891-92 (Pa. 2018) (citations omitted).

The Pennsylvania Rules of Civil Procedure provide:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[.]

Pa.R.C.P. 1035.2(1).

Further, in Pennsylvania, tort claims for negligence are subject to a two-year statute of limitations. *See* 42 Pa.C.S. § 5524(a)(2) (providing that "[a]n action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another" must be commenced within two years).

The Judicial Code provides that limitations periods run from the time the cause of action accrued. 42 Pa.C.S. § 5502(a). Generally, a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted. Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action. The discovery rule is an exception to this rule that tolls the statute of limitations when the plaintiff is reasonably unaware that she has been injured and that her injury has been caused by another party's conduct. A cause of action accrues upon actual or

constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause.

The discovery rule requires the plaintiff to exercise reasonable diligence in investigating the cause of her injuries. The reasonable diligence standard is objective, as the question is not what the plaintiff actually knew of the injury or its cause, but what he might have known by exercising the diligence required by law. That being said, the objective reasonable diligence standard is sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question, and, as such, is to be applied with reference to individual characteristics.

Under this reasonable diligence standard, a plaintiff's actions are examined to determine whether the plaintiff demonstrated those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others. It is the party that asserts application of the discovery rule that bears the burden of proving that reasonable diligence was exercised. Finally, as noted, because the reasonable diligence determination is fact intensive, the inquiry is ordinarily a question for the jury.

*Carlino v. Ethicon, Inc.*, 208 A.3d 92, 103-04 (Pa. Super. 2019) (some citations omitted and formatting altered).

Although the reasonable diligence standard is an objective one, it is to be applied with reference to individual characteristics. Pursuant to the application of the discovery rule, the point at which the complaining party should reasonably be aware that [s]he has suffered an injury is a factual issue best determined by the collective judgment, wisdom and experience of jurors.

Indeed, the polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff. The failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law.

*DiDomizio v. Jefferson Pulmonary Assocs.*, 280 A.3d 1039, 1046 (Pa. Super. 2022) (citations omitted and formatting altered). Further,

> A plaintiff who wishes to assert the discovery rule may do so in one of two ways: 1) by pleading in the complaint sufficient facts to sustain application of the rule; or 2) by waiting until the defendant asserts a statute of limitations defense in new matter and then raising the discovery rule in a responsive pleading.

*Id.* at 1045 n.5 (quoting *Prevish v. Northwest Med. Ctr. Oil City Campus*, 692 A.2d 192, 197 (Pa. Super. 1997)).

With these principles in mind, we must determine whether the trial court erred or abused its discretion in concluding that Appellants knew or should have known of the injury more than two years prior to the date that they filed their writ of summons. *See Nicolaou*, 195 A.3d at 892; *DiDomizio*, 280 A.3d at 1046; *Carlino*, 208 A.3d at 103-04.

In *Nicolauo*, our Supreme Court found that it is within the province of a jury to determine whether an untrained lay person should have known that she suffered from a disease after a obtaining a "probable" diagnosis, and concluded that it is for the jury, not a court, to determine whether a person acted reasonably in delaying testing to confirm a "probable" diagnosis. *Nicolaou*, 195 A.3d at 895.

In *Nicolauo*,

> the plaintiff suffered a tick bite in 2001 and underwent four Lyme disease tests over the next several years. The test results for Lyme disease were negative; instead, she was diagnosed with multiple sclerosis [(MS)]. In 2009, another health practitioner, Nurse Rhoads, suggested that the plaintiff's Lyme disease tests yielded false negatives and recommended that the plaintiff

undergo a different test. At first, the plaintiff declined because she lacked health insurance and could not pay for it out of pocket, but she later agreed to take the test. On February 13, 2010, the test came back positive for Lyme disease. On February 10, 2012, she filed a complaint against various medical providers alleging that they were negligent for failing to diagnose Lyme disease. The trial court granted summary judgment to the providers. Our Supreme Court summarized the trial court's ruling as follows:

> The trial court reasoned that prior to [the plaintiff's] last visit with Nurse Rhoads on February 1, 2010, [the plaintiff] was aware that her symptoms arose after a tick bite; that a 2006 MRI indicated that she had either MS or Lyme disease; that treatment for MS had been unsuccessful; that Nurse Rhoads believed she probably had Lyme disease based on her clinical symptoms and prior MRI; that Nurse Rhoads treated her for Lyme disease by administering antibiotics, after which [the plaintiff] saw an improvement in her symptoms; and that Nurse Rhoads had urged [the plaintiff] to confirm the diagnosis with a different type of Lyme disease test.
>
> The trial court reasoned that not only would a reasonable person have suspected that [the plaintiff's] injuries could have been caused by [the providers'] failure to diagnose and treat her Lyme disease, but that [the plaintiff] actually suspected such connection, as demonstrated by her Facebook post, stating that she suspected she had Lyme disease before she received the positive test results. Finally, the trial court rejected the contention that [the plaintiff's] inability to pay for a fifth Lyme disease test tolled the statute of limitations, finding that [the plaintiff] "could have confirmed her suspicion regarding the Lyme disease diagnosis on or about the December 7, 2009 visit, but she opted not to."

[**Nicolaou**,] 195 A.3d at 886-87.

Our Supreme Court reversed and remanded for further proceedings, reasoning that genuine issues of material fact prevented the providers from obtaining summary judgment under the statute of limitations . . . . **Id.** at 895 (quotations and citations omitted).

- 10 -

In a nutshell, despite the evidence pointing to Lyme disease in *Nicolaou*, other evidence precluded judgment as a matter of law by creating a genuine issue of material fact as to whether the plaintiff reasonably should have known that she suffered from Lyme disease more than two years before she filed suit. *Id.*

*Carlino*, 208 A.3d at 105-06 (some formatting altered).

Here, the trial court explained:

[Appellants'] allegations of negligence against Dr. Lippe, upon which all claims of negligence are based as to [Appellees], rest upon assertions that Dr. Lippe inserted prosthetics that were too short during each of [Swart's] right hip replacement surgeries, on November 17, 2015 and January 17, 2017, respectively, which resulted in her right leg being shorter than her left. . . . Swart asserted that after her second surgery, her pain remained relentless until her third surgery on October 10, 2018. [Appellants] initiated their action on October 9, 2020, when they filed their writ of summons, two years less a day from the date of . . . Swart's third surgery.

[Appellees] argued that the record clearly showed that the very latest [Appellants'] action accrued was on or around July 9, 2018, after . . . Swart obtained a third orthopedic surgeon's opinion, confirming earlier opinions she obtained from two other doctors in late 2017 and early 2018, that the hip replacement components used by Dr. Lippe were too short and caused . . . Swart's shorter right leg and corresponding pain. Thus, the latest that [Appellants] could have instituted their action, according to [Appellees], was July 8, 2020. [Appellants] argued that under the discovery rule, their negligence action did not accrue until after Swart's third surgery on October 10, 2018, during which Dr. Lippe's negligence was confirmed. As such, [Appellants] argued they had until October 9, 2020, to commence their action, and that they so complied.

Trial Ct. Op., 5/3/23, at 5-6.

The trial court also concluded:

Swart consistently testified at her deposition, without any contradiction or ambiguity, that she knew no later than July 9, 2018, that she was suffering from significant pain, leg length

- 11 -

discrepancy[,] and corresponding physical limitations following her second surgery and that she believed that this harm was caused by Dr. Lippe's second surgery, which beliefs were confirmed to her by other doctors. [Appellants] have failed to otherwise show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there are any genuine issues for trial.

The record clearly showed that [Appellants'] action accrued no later than July 9, 2018. Because [Appellants] did not commence their suit until October 9, 2020, the action was filed beyond the two-year statute of limitations. Accordingly, this court entered judgment in favor of [Appellees] and dismissed [Appellants'] complaint.

Trial Ct. Op., 5/3/23, at 19.

Following our review of the record, we are constrained to disagree with the trial court's findings, and we conclude that the trial court abused its discretion in granting Appellees' motion for summary judgment. *See Nicolaou*, 195 A.3d at 892; *see also DiDomizio*, 280 A.3d at 1046; *Carlino*, 208 A.3d at 103-04.

Although Swart testified that Dr. Bosch discussed his observations regarding her hip, the femoral stem, and noted that Swart's legs were not of equal length, Swart stated that Dr. Bosch never asserted that Dr. Lippe erred or that Swart's condition was caused by any mistake on the part of Dr. Lippe. *See* N.T., Swart Dep., 4/8/22, at 106-08. Further, while Swart was aware that she was in pain and had a leg length discrepancy, there is a genuine issue of fact concerning whether she knew or should reasonably have known that her pain and symptoms were caused by Dr. Lippe prior to October 10, 2018. *See Carlino*, 208 A.3d at 103-04; *see also* Appellants' Compl., 12/7/20, at

¶¶ 81-89. As noted previously, "the point at which the complaining party should reasonably be aware that [s]he has suffered an injury is a factual issue best determined by the collective judgment, wisdom and experience of jurors." *DiDomizio*, 280 A.3d at 1046 (citation omitted).

Under the circumstances presented here, a determination concerning when Appellants knew or should have known whether Dr. Lippe caused injuries is a question best left to a jury. *See DiDomizio*, 280 A.3d at 1046; *see also Nicolaou*, 195 A.3d at 895. Indeed, it is not for the trial court to decide issues of fact on summary judgment, but only to decide whether there is an issue of fact to be tried. *See Nicolaou*, 195 A.3d at 895; Pa.R.C.P. 1035.2(1). After review, we conclude that there is a genuine issue of material fact regarding whether Appellants should reasonably have been aware that Swart's pain and symptoms were caused by Appellees more than two years before Appellants initiate the underlying action. *See Nicolaou*, 195 A.3d at 892; Pa.R.C.P. 1035.2(1).[2]

In sum, we conclude that the factual issues pertaining to Appellants' notice and diligence must be decided by a jury. *See Nicolaou*, 195 A.3d at 895. Accordingly, we are constrained to reverse the order granting summary

---

[2] With respect to Appellees' alternate claim that Appellants waived the discovery rule, we disagree. As noted above, in their complaint, Appellants plead that they did not discover Appellees' negligence until after Dr. Alhadeff performed surgery on October 10, 2018, and Dr. Alhadeff concluded that Swart's pain was due to Dr. Lippe's surgery. *See* Appellants' Compl., 12/7/20, at ¶¶ 81-89. We conclude that Appellants' assertions in her complaint were sufficient to preserve her discovery rule claim. *See*, *e.g.*, *DiDomizio*, 280 A.3d at 1045 n.5.

judgment and remand this matter to the trial court for further proceedings consistent with this memorandum.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/22/2024