John SALVADIA and Deneen Gethouas, Individually and as Parents and Natural Guardians of Tiffanie Salvadia, a Minor, Appellee

v.

Patricia ASHBROOK, C.R.N.P., David Besselman, M.D., and Besselman Pediatric Associates, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 14, 2006.

Filed April 17, 2007.

April L. Strant–Kutay, Lancaster, for appellant.

B. Craig Black, Harrisburg, for appellees.

BEFORE: TODD, BENDER and COLVILLE *, JJ.

* Retired Senior Judge Assigned to the Superior Court.

OPINION BY BENDER, J.:

¶ 1 John Salvadia and Deneen Gethouas, individually and as the parents and natural guardian of Tiffanie Salvadia, a minor, (collectively, "Plaintiffs"), appeal from the January 5, 2006 order dismissing, with prejudice, their medical malpractice case against Patricia Ashbrook, C.R.N.P., David Besselman, M.D., and Besselman Pediatric Associates (collectively, "Defendants"). Plaintiffs claim that the trial court erred by dismissing the case pursuant to 20 Pa. C.S. § 3375 ("Abatement of action for failure to take out letters"). We affirm.

¶ 2 The trial court set forth the following history of this case:

[T]he Plaintiffs[,] John Salvadia and Deneen Gethouas, parents of Tiffanie Salvadia, allege that in 1996, at age 11, Tiffanie experienced heavy and prolonged bleeding associated with her menstrual cycle, which symptoms persisted through the Fall of 1998. Plaintiffs allege that Tiffanie's mother contacted Besselman Pediatric Associates to seek advice with regard to the heavy menstrual periods. In February 1999, Tiffanie was seen at the Besselman Pediatric Associates by Defendant Patricia Ashbrook, a nurse practitioner in that office. Plaintiffs allege that Nurse Ashbrook advised that Ms. Gethouas monitor Tiffanie's menstrual cycle and report any abnormalities, and that the description of the pattern was within the normal realm for a young girl. Plaintiffs allege that Ms. Gethouas called the office in June, July and August of 1999 and expressed concerns about Tiffanie's symptoms. In August 1999, Ms. Gethouas requested a referral from Nurse Ashbrook to a gynecological specialist, which request was declined. A referral was ultimately provided in October 1999. Upon examination by the gynecologist in October 1999, a vaginal mass was detected which was diagnosed as cancerous. Tiffanie underwent a total abdominal hysterectomy and received chemotherapy treatment. The cancer recurred, necessitating further surgery and high dose chemotherapy. However, Tiffanie passed away on December 15, 2001. The Plaintiffs allege that the Defendants failed to timely diagnos[e] and properly treat the mass.

Trial Court Opinion, 1/5/06, at 1–2. Prior to Tiffanie's death, Plaintiffs initiated a medical malpractice action against Defendants by filing a complaint on January 3, 2001. In the complaint, Plaintiffs set forth three separate counts of negligence, i.e., one count against each Defendant. For a period of time thereafter, the parties engaged in discovery, Defendants filed an answer with new matter, and the matter was stayed temporarily due to bankruptcy proceedings related to Defendants' malpractice insurer, PHICO Insurance Company.

¶ 3 Then, on April 24, 2003, Plaintiffs' attorney filed a notice of death, indicating that Tiffanie Salvadia died during the pendency of the case. However, Plaintiffs' attorney did not take out letters of administration at that time.

¶ 4 On July 23, 2004, pursuant to 20 Pa.C.S. § 3375 ("Abatement of action for failure to take out letters"), Defendants filed a "Petition for Abatement for Failure to Take Out Letters of Administration and to Dismiss Claims of Tiffanie Salvadia with Prejudice." Following the briefing of the abatement issue, the trial court entered an order and opinion on January 5, 2006, in which it granted Defendants' petition for abatement and dismissed this case with prejudice. On February 2, 2006, Plaintiffs filed a timely notice of appeal from this order.

¶ 5 Plaintiffs set forth the following "Statement of Questions Involved," in their appellate brief:

    A. WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' PETITION FOR ABATEMENT AND DISMISSING [PLAINTIFFS'] COMPLAINT WHERE [PLAINTIFFS'] FAILURE TO TAKE OUT LETTERS OF ADMINISTRATION WAS REASONABLY EXPLAINED BY PLAINTIFFS' RELIANCE ON [DEFENDANTS'] EFFORTS TO ACTIVELY LITIGATE THE CASE?

    B. WHETHER THE TRIAL COURT ERRED IN RULING THAT [DEFENDANTS'] DID NOT WAIVE THEIR GROUNDS FOR ABATEMENT BY ACTIVELY LITIGATING THE CASE TOWARDS TRIAL?

    C. WHETHER THE TRIAL COURT ERRED IN NOT CONSIDERING THAT [PLAINTIFFS'] ERROR IN NOT FORMALLY TAKING OUT THE LETTERS WAS MINOR AND IN NO WAY AFFECTED OR PREJUDICED [DEFENDANTS], AND THUS PURSUANT TO Pa.R.C.P. No. 126, THE ERROR SHOULD HAVE BEEN DISREGARDED?

Plaintiffs' brief at 3 ("suggested answers" omitted).

▉ ¶ 6 Initially, we note that this case centers upon the interpretation and application of 20 Pa.C.S. § 3375, contained in Pennsylvania's Probate, Estates and Fiduciaries Code. Thus, we recognize the following precepts that guide our review:

> [W]hen determining the meaning of a statute, a court must construe the words of that statute according to their plain meaning. 1 Pa.C.S.A. § 1903(a); *Ludmer v. Nernberg*, 699 A.2d 764, 765 (Pa.Super.1997). When the words of a statute are [clear and free from all ambiguity], they are not to be disregarded under the pretext of pursuing the spirit of the statute. 1 Pa.C.S.A. § 1921(a); *Commonwealth v. Heberling*, 451 Pa.Super. 119, 678 A.2d 794, 795 (1996). It is only when the statute is unclear that the court may embark upon the task of ascertaining the intent of the legislature. *Id.* Absent a definition, statutes are presumed to employ words in their popular and plain everyday sense, and popular meanings of such words must prevail. *Centolanza v. Lehigh Valley Dairies, Inc.*, 540 Pa. 398, 406, 658 A.2d 336, 340 (1995); *Commonwealth v. Kelley*, 569 Pa. 179, 801 A.2d 551, 555 (2002).

*Nippes v. Lucas*, 815 A.2d 648, 650 (Pa.Super.2003). Moreover, issues involving statutory interpretation present questions of law for which our standard of review is *de novo* and our scope of review is plenary. *Kopko v. Miller*, 586 Pa. 170, 892 A.2d 766, 770 (2006). *Ruthrauff, Inc. v. Ravin, Inc.*, 2006 PA Super 352, ¶ 37, 914 A.2d 880.

▉ ¶ 7 We also recognize, preliminarily, that "[a]t common law, an action for personal injury did not survive death[.]" *Pennock v. Lenzi*, 882 A.2d 1057, 1064 n. 8 (Pa.Cmwlth.2005) (citing *Moyer v. Phillips*, 462 Pa. 395, 341 A.2d 441, 442–43 (1975)). To counter the common law principle, our legislature enacted a survival statute providing generally that "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff . . . ." 42 Pa.C.S. § 8302 ("Survival action"). With the survival statute, the plaintiff's death does not abate the cause of action as it did at common law; rather, the action survives and simply continues in

the decedent's personal representative. *Tulewicz v. Southeastern Pennsylvania Transp. Auth.*, 529 Pa. 588, 606 A.2d 427, 431 (1992). Moreover, "all actions that survive a decedent must be brought by or against the personal representative" and "a decedent's estate cannot be a party to litigation unless a personal representative exists." *Marzella v. King*, 256 Pa.Super. 179, 389 A.2d 659, 660–61 (1978) (citations omitted).

¶ 8 Accordingly, our legislature has provided for proper substitution of a party upon the death of a party during the pendency of the action. *See* 20 Pa.C.S. § 3372 ("Substitution of the personal representative of a deceased party to a pending action or proceeding shall be as provided by law."). In conjunction with this statute, we have procedural rules governing substitution of parties. Pa.R.C.P. 2351–2374. In particular, Rule 2355 (entitled, "Notice of Death of a Party. Substitution of Personal Representative") provides, *inter alia*, that "[i]f a named party dies after the commencement of an action, the attorney of record for the deceased party shall file a notice of death with the prothonotary." As noted above, in the instant case, Tiffanie died on December 15, 2001, after the suit was commenced, and Plaintiffs' attorney filed a notice of death on April 24, 2003.

¶ 9 Although the survival statute functions to preserve a cause of action upon a party's death, another statute, the one at issue presently, provides a means for a defendant to later seek abatement, specifically, upon a plaintiff's death and the subsequent failure to take out letters of administration:

§ 3375. **Abatement of action for failure to take out letters**

If a plaintiff or petitioner in any action or proceeding now pending or hereafter brought dies and a personal representative is not appointed within one year after a suggestion of such death is filed in the action or proceeding, any defendant or respondent may petition the court to abate the action as to the cause of action of the decedent. Copies of the petition shall be served upon the executor named in the will, if known to the defendant, and otherwise upon all known next of kin entitled to letters of administration. The court shall abate the action as to the cause of action of the decedent if the delay in taking out letters [1] is not reasonably explained.

20 Pa.C.S. § 3375. Our plain language interpretation of this statute follows.

¶ 10 First, section 3375 provides that the defendant "may" file a petition to abate under circumstances such as those presented in the instant case, *i.e.*, where a plaintiff dies and a suggestion of death is filed, but a personal representative is not appointed within one year after the suggestion of death is filed. The use of "may," in the context of this statute, indicates that it is up to the defendant to decide whether to file a petition for abatement. *See Girard Trust Bank v. Life Ins. Co. of North America*, 243 Pa.Super. 152, 364 A.2d 495, 499 (1976) (noting that use of "may" in a statute is ordinarily construed as permissive, as opposed to mandatory, but may be subject to construction as mandatory in other contexts such as in a statute granting authority to a public official). *See also Sevast v. Kakouras*, 841 A.2d 1062, 1068 (Pa.Super.2003) (indicating that "the word 'may' can never be given the imperative meaning" but also recognizing limited exceptions).

---

1. "Letters," as defined in the Probate, Estates and Fiduciaries Code, "[m]eans letters testa- mentary or letters of administration of any description." 20 Pa.C.S. § 102.

¶ 11 However, once the defendant files the petition for abatement, as in the instant case where the letters of administration were not sought within a year following the filing of the notice of death in a pending action, the court "shall" abate the action unless the plaintiff presents a reasonable explanation for the delay in taking out letters. The use of "shall" in the context of this statute reveals the legislature's mandatory directive to the court, *i.e.*, the court *must* abate the action *if* the plaintiff fails to present a reasonable explanation for the delay in taking out letters of administration. *See Jennison Family Ltd. P'ship v. Montour Sch. Dist.,* 802 A.2d 1257, 1262 (Pa.Cmwlth.2002) ("[A] mandatory interpretation is usually conferred upon the word 'shall' whereas a discretionary one is usually conferred upon the word 'may.' Additionally, ... where, as here, both 'shall' and 'may' are used in the same statute, 'it is a fair inference that the legislature realized the difference in meaning, and intended that the verbs used should carry with them their ordinary meanings.' " (citation omitted)).

¶ 12 Thus, the degree of discretion given to the court by the legislature is limited to whether the court finds that the plaintiff has presented a reasonable explanation for the delay. This brings us to Plaintiffs' first issue, in which Plaintiffs argue that the trial court erred by failing to conclude that they presented a reasonable explanation for the delay. In this respect, we note that:

> The findings of an Orphans' Court judge must be accorded the same weight and effect as a jury verdict. This Court can modify an Orphans' Court decree only if it is unsupported by competent or adequate evidence or if an error of law, abuse of discretion or capricious disbelief of competent evidence has taken place.

*Dohner v. Clemens,* 703 A.2d 708, 710 (Pa.Super.1997).

¶ 13 As noted above, Plaintiffs filed the notice of death on April 24, 2003, following which Defendants, obviously recognizing that Plaintiffs did not take out letters of administration within a year of that date, filed a petition for abatement, pursuant to section 3375, on July 23, 2004. Thereafter, on August 19, 2004, *i.e.,* almost one year and four months from the date Plaintiffs filed the notice of death, Plaintiffs requested and were granted letters of administration. Plaintiffs proffered, as a "reasonable explanation" for their delay in taking out letters, that Defendants continued to engage in discovery and actively proceeded with the litigation, and Plaintiffs further argued that they relied upon Defendants' active litigation of the case in not taking out letters of administration.

¶ 14 In support of their argument that their delay was reasonable, Plaintiffs attempt to distinguish *Dohner.* In *Dohner,* the plaintiff died following the commencement of his medical malpractice case, the case languished for a period of time, and the defendants sought abatement under section 3375. *Dohner,* 703 A.2d at 709. The trial court granted the defendants' petition for abatement, finding that the plaintiff did not provide a reasonable excuse for the delay in filing letters of administration. The plaintiff contended "the delay occurred because the decedent's children from his first marriage refused to communicate with decedent's counsel and refused to sign renunciation forms in favor of decedent's mother or wife." *Id.* The plaintiff argued, therefore, that the decedent's children "prevented the creation of an estate and blocked the progression of their father's civil suit." *Id.* (citation omitted). However, "[t]he trial judge did not agree with [the plaintiff] that the 'years of unresolved tension' which resulted from

the divorce and created the delay in appointing the personal representative was a reasonable explanation." *Id.* We concluded that the trial court did not abuse its discretion or commit an error of law in reaching this decision. *Id.* at 710.

¶ 15 Here, Plaintiffs' distinguish *Dohner* in that the instant case did not languish but, rather, Defendants continued to actively litigate the case subsequent to Plaintiffs' filing of the notice of death on April 24, 2003. Plaintiffs' brief at 7. Plaintiffs also argue that they reasonably relied on Defendants' efforts, as well as their own, in moving the case toward trial. *Id.* As noted, they contend that this constitutes a reasonable explanation as to why letters of administration were not timely taken out. *Id.*

¶ 16 However, in *Dohner*, the trial court's decision in finding that the plaintiff proffered no reasonable explanation was not based on any period of time in which the case languished. Rather, the court found the plaintiff's excuse, blaming the delay on the decedent's children, to not be reasonable. We agreed with the trial court's decision, and we further noted that the law provided a means for the decedent's counsel to seek letters of administration despite the decedent's children's refusal to do so. *Id.*

¶ 17 Accordingly, *Dohner* does not support Plaintiffs' argument on this issue. *See also Munday v. Underwriter Services, Inc.*, 25 Pa.D. & C.4th 289 (Allegheny Cty. 1995) (granting defendant's petition to abate and concluding that plaintiff failed to provide reasonable explanation for delay where plaintiff argued that there was no need to appoint a personal representative because plaintiff and decedent owned all property jointly and that defendant was not prejudiced by delay). We cannot conclude that the trial court in the instant case erred or abused its discretion by determining that the fact that Defendants engaged in discovery did not provide a reasonable excuse for Plaintiffs' failure to take out letters of administration. Moreover, Plaintiffs fail to explain how they "reasonably relied" upon Defendants' actions, and how that reliance prevented them from seeking letters of administration. Thus, Plaintiffs are not entitled to relief under their first issue.

¶ 18 Similarly, in their second issue, Plaintiffs argue that Defendants waived their grounds for abatement by actively litigating the case after the notice of death was filed. Plaintiffs' brief at 7. Plaintiffs cite *Berdine v. Washington Hosp.*, 17 Pa. D. & C.3d 26 (Washington Cty.1980), for the proposition that a defendant may "waive its grounds for abatement by taking any step towards the determination of the cause on its merits." Plaintiffs' brief at 7.

¶ 19 In *Berdine*, the plaintiff's minor son died during the pendency of their medical malpractice action. *Id.* at 28. The defendant doctor filed a suggestion of death a few days later, on June 24, 1977. *Id.* The parties engaged in discovery and correspondence in moving the case toward trial. The plaintiff took out letters of administration on August 3, 1978, as administrator of the estate of his minor son. *Id.* The following day, August 4, 1978, the plaintiff filed a suggestion of death and substituted himself as administrator. *Id.* *Three weeks later*, the defendant doctor filed a petition for abatement pursuant to section 3375. *Id.* The trial court concluded that "by failing to file his petition to abate until after an administrator was appointed and voluntarily substituted as a party, and by continuing to participate in the proceeding, this defendant waived his claim to abatement." *Id.* at 30.

¶ 20 Although Plaintiffs in the instant case rely on *Berdine* to argue that Defendants have waived their right to seek abatement for their participation in discovery activities, it was critical to the analysis in *Berdine* that the defendant had filed his petition for abatement *after* the plaintiff had been appointed administrator and substituted as a party.[2] In the instant case, the reverse occurred—*i.e.*, Defendants filed a petition for abatement over one-year (actually, approximately 15 months) following the filing of the notice of death, in accordance with section 3375, and *then*, almost one month *after* Defendants filed their petition for abatement, Plaintiffs finally sought and received letters of administration. Accordingly, Plaintiffs' reliance on *Berdine* does not persuade this Court that Defendants in the instant case waived their right to seek abatement under section 3375.

¶ 21 Moreover, it cannot be said that Defendants took steps towards disposing of the case on its merits following the filing of the notice of death, as Plaintiffs suggest in support of their waiver argument. Indeed, the only docket activity between the time Plaintiff filed the notice of death and the time Defendants filed the petition for abatement, was the filing of a certificate prerequisite to filing a subpoena, which Defendants filed on January 12, 2004. We will not characterize this single act of discovery as a "step towards the determination of the cause on its merits." *See, e.g.*, BLACK'S LAW DICTIONARY 498 (8th ed.2004) (defining discovery, *inter alia*, as "[t]he act or process of finding or learning something that was previously unknown"). Thus, we conclude that Defendants did not waive their right to seek abatement under sec-

tion 3375 due to their single act of seeking to file a subpoena or engaging in other acts of discovery not recorded in the docket.

¶ 22 Finally, in their third issue, Plaintiffs contend that the trial court erred by granting Defendants' petition for abatement because Defendants did not suffer any prejudice by the delay and, according to Pa.R.C.P. 126, "[t]he court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." *See* Plaintiffs' brief at 9 (quoting Pa.R.C.P. 126). Plaintiffs argue that the failure to timely take out letters in accordance with 3375 had "absolutely no effect on [the] litigation" and that Defendants' "substantial rights" were not affected in any way.

¶ 23 We first note that Pa.R.C.P. 126 applies to construction of procedural rules of court, not statutory provisions like section 3375. Perhaps Plaintiffs intended to cite the analogous provision at 1 Pa.C.S. § 1928 ("Rule of strict and liberal construction"), which applies to statutory construction. Section 1928(c) provides that all provisions of a statute (except for types of statutes enumerated in section (b), which must be strictly construed), "shall be liberally construed to effect their objects and promote justice." 1 Pa.C.S. § 1928(c). Nevertheless, even a liberal interpretation of section 3375 reveals that the legislature did not intend the court to consider prejudice in its determination of whether or not to grant a petition for abatement. Rather, as detailed in our statutory interpretation of 3375, *supra*, the only consideration pro-

---

2. The *Berdine* court also held other factors against the defendant, such as the fact that he failed to place his petition for abatement down for argument for more than one and one-half years after filing it, and that he failed to serve next of kin with the petition. But central to the court's holding, finding waiver, was that the defendant filed the petition for abatement *after* the plaintiff filed letters and was substituted as a party.

vided for by the legislature was a determination of whether a plaintiff presented a reasonable explanation for the delay. "Our duty to interpret statutes does not include the right to add provisions that the legislature has omitted." *Lewis v. Erie Ins. Exch.,* 753 A.2d 839, 850 (Pa.Super.2000). *See also Gangemi v. DiAntonio,* 31 Pa. D. & C.3d 616, 619 (Philadelphia Cty.1983) (concluding, under similar circumstances, that if "legislature had intended to require a showing of prejudice [under section 3375], it would have said so" and that the court cannot "not ignore the clear language of the statute and inject such a requirement to avoid a seemingly harsh result"). Moreover, as recognized by the *Gangemi* court, "any appearance of harshness is tempered by the observation that § 3375 prescribes a specific, lengthy period to perform a fairly simple task." *Gangemi,* 31 Pa.D. & C.3d at 620. We agree with that assessment of the statute. In sum, we decline to rewrite the unambiguous plain language of section 3375 to add a consideration of prejudice.[3]

¶ 24 For the foregoing reasons, we affirm the January 5, 2006 order dismissing Plaintiffs' case pursuant to Defendants' petition for abatement under section 3375.

¶ 25 Order affirmed.

---

3. Conceivably, our legislature could amend the statute to include the prejudice consideration for future cases like the instant case, where we are presented with the death of a minor with, presumably, no will or assets, and where the defendants have experienced no prejudice. However, under the circumstances presented herein, we in the judiciary cannot rewrite the provisions of an unambiguous statute.