J-E01003-24          2025 PA Super 103

| | | |
|---|---|---|
| DENIA EDWARDS, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOUGLAS A. EDWARDS | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| NORFOLK SOUTHERN RAILWAY COMPANY | : : : | No. 826 EDA 2021 |
| Appellant | : | |

Appeal from the Order Entered November 2, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 181003685

BEFORE: LAZARUS, P.J., BOWES, J., STABILE, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., KING, J., SULLIVAN, J., and LANE, J.

OPINION BY LAZARUS, P.J.:                    **FILED MAY 13, 2025**

Norfolk Southern Railway Company ("Norfolk") appeals by permission[1] from the order, entered in the Court of Common Pleas of Philadelphia County, denying its motion for summary judgment. Upon review, we affirm.

Douglas A. Edwards ("Decedent") was employed by Norfolk as a brakeman, conductor, and locomotive engineer from 1989 to 2010. Decedent was subsequently diagnosed with renal cell cancer, allegedly as a result of on-the-job exposure to various toxic substances; he died on October 27, 2015. On October 26, 2018, with one day left before the statute of limitations expired, Appellee Denia Edwards ("Edwards"), Decedent's wife, filed an action

_____

[1] **See** Pa.R.A.P. 1311(b) (providing for appeal by permission of interlocutory orders). **See also** Order, 4/28/21 (granting petition for permission to appeal).

under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, alleging that Decedent's cancer was caused by his two-decade-plus employment with Norfolk. The complaint identified the plaintiff as "DENIA EDWARDS, Personal Representative for the Estate of DOUGLAS A. EDWARDS." At the time, however, Edwards had neither applied to be, nor been appointed as, the personal representative of Decedent's estate, even though she was named as executrix of his will. On December 27, 2018, two months after the statute of limitations for a FELA action had run, Edwards applied to be the personal representative of Decedent's estate in Mercer County, West Virginia, where she and Decedent lived.[2]

Norfolk filed preliminary objections for lack of personal jurisdiction, which were denied after Edwards filed an amended complaint. Norfolk then filed an answer and new matter raising the statute of limitations as a defense, after which it moved for summary judgment on that same basis, asserting that the action was time-barred because Edwards did not apply to be the personal representative until after the statute of limitations had expired. Edwards countered that her appointment as personal representative related back to her filing the complaint. The trial court agreed and denied summary judgment. After the trial court refused to certify its order as an appealable

_____

[2] Under West Virginia law, "[a] person appointed to be the executor of a will shall not have the powers of executor until he or she qualifies by taking an oath and giving bond, unless not required to post bond by § 44-1-8 of this code[.]" W. Va. Code § 44-1-1.

- 2 -

interlocutory order, **see** Trial Court Order, 12/21/20,[3] Norfolk petitioned this

Court for permission to appeal under Rule 1311(b), which we granted.[4]

_____

[3] Confusingly, the order denying certification was signed on January 8, 2021, but stamped as filed in the Office of Civil Administration on December 21, 2020.

[4] A petition for permission to appeal from the denial of a motion for certification under 42 Pa.C.S.A. § 702(b) (relating to interlocutory appeals by permission) must include:

> [A] statement of reasons why the order involves a controlling question of law as to which there is a substantial ground for difference of opinion, that ultimate termination of the matter, and why the refusal of certification was an abuse of the trial court's . . . discretion that is so egregious as to justify prerogative appellate correction.

Pa.R.A.P. 1312(a)(5)(ii). This case raised a controlling question of law as to which there is a substantial ground for difference of opinion insofar as the various trial courts have applied the relation back doctrine inconsistently where, as here, a plaintiff filed the complaint before being appointed as personal representative and did not apply for appointment as personal representative until after the statute of limitation expired. **Compare Hood v. Consol. Rail Corp**., March Term 2018, No. 2730 (Phila. Ct. Com. Pl. 2019), (granting summary judgment in favor of defendant where plaintiff applied for letters of administration after initiating litigation); and **Clarkson v. Penn Central Corp a/k/a American Premier Underwriters, Inc. and Consol. Rail Corp.**, Dec. Term 2017, No. 3292 (Phila. Ct. Com. Pl. 2019) (finding relation back doctrine inapplicable where plaintiff did not commence steps to become personal representative before running of statute of limitations) **with Schmeltz v. CSX Trans.**, Aug. Term 2018, No. 00280 (Phila. Ct. Com. Pl. 2019) (denying summary judgment where plaintiff filed litigation prior to appointment as personal representative of decedent's estate).

As an immediate appeal from the order denying Norfolk's motion for summary judgment could be dispositive of this litigation, the trial court's refusal to certify the order for interlocutory appeal in this situation was tantamount to an egregious abuse of discretion that justified our prerogative appellate correction.

Norfolk subsequently filed a notice of appeal. Norfolk argued that summary judgment should have been granted because Edwards waited until after the statute of limitations to apply for appointment as personal representative of Decedent's estate. A three-judge panel of this Court affirmed the trial court's decision, after which Norfolk sought, and was granted, en banc reargument. *See* Order, 5/24/23. In its substituted brief on reargument, Norfolk raises the following claims for our review:

> 1. Whether the trial court erred in not granting summary judgment in favor of Norfolk [] due to [Edwards'] lack of legal authority to institute the action when she filed her lawsuit prior to being appointed as [D]ecedent's personal representative, as required by [FELA]?
>
> 2. Whether the trial court erred in not granting summary judgment on the ground that the applicable FELA statute of limitations had expired, as the statute had run before [Edwards] sought or obtained appointment as decedent's personal representative?

Appellant's Substituted Brief on Reargument, at 3-4.

In reviewing the grant or denial of summary judgment, our standard of review is *de novo*, and our scope of review is plenary. ***Khalil v. Williams***, 278 A.3d 859, 871 (Pa. 2022).

> We have explained that a trial court should grant summary judgment only in cases where the record contains no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. It is the moving party's burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. . . . An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion.

- 4 -

*Id.* Here, there are no genuine issues of material fact. The question, therefore, is whether the court erred as a matter of law when it denied Norfolk summary judgment.

At issue in this matter is the application of the "relation back" doctrine. Generally, "all actions that survive a decedent must be brought by or against the personal representative" and "a decedent's estate cannot be a party to litigation unless a personal representative exists." *Salvadia v. Askbrook*, 923 A.2d 436, 440 (Pa. Super. 2007) (citation omitted). The relation back doctrine, however, will sometimes be applied as an exception to the general rule.

> Simply stated, the doctrine of relation back as applied to cases where an estate is a party means that the courts under certain circumstances will validate the acts of the personal representative of the estate which preceded the date of [her] official appointment. Thus, where a plaintiff, acting as the personal representative of an estate, initiates an action before the statute of limitations has run, but also before [] her appointment as personal representative has been finalized, the doctrine of relation back may be applied in appropriate circumstances to validate the filing of the action, even though the plaintiff's appointment is not finalized until after the limitations period has expired.

*Prevish v. Northwest Med. Ctr. Oil City Campus*, 692 A.2d 192, 201 (Pa. Super. 1997) (en banc) (internal quotations and citations omitted).

In the late 1970s, the relation back doctrine was applied in three cases in which the plaintiffs applied to be the personal representative of their decedents' estates but were not formally appointed until after the statute of limitations had run. First, in *McGuire v. Erie Lackawanna Ry. Co.*, 385

- 5 -

A.2d 466 (Pa. Super. 1978), the plaintiff petitioned to be the administrator of his daughter's estate after she was hit and killed by a train. Although plaintiff paid the filing fee, letters of administration were not issued because he did not post a bond. Before the statute of limitations ran, the plaintiff filed a survival action alleging that he was the administrator of his daughter's estate. Three weeks later, he posted bond and was issued letters of administration. The defendant moved for summary judgment because the statute of limitations had run before letters were issued. The trial court denied summary judgment and certified its order as involving a controlling question of law.

On appeal, this Court held that plaintiff's appointment as administrator related back to the date on which he filed the action. We began by noting that the relation back doctrine had generally been limited to actions that benefit an estate. We found this test too limited, however, because it did not answer whether a railroad should have to pay an asset to an estate that did not exist at the time the limitations period expired. *Id.* at 467-68. As a result, we suggested the better test was "whether in all circumstances 'relation back' will achieve a just result." *Id.* at 468.

In determining what a just result would be in the case, we emphasized that the purpose of statutes of limitations is to "expedite litigation and[,] thus[,] to discourage delay and the presentation of stale claims" and to "promote finality and stability." *Id.* (citations omitted). With this in mind, we found that the plaintiff had done enough within the statutory period to fulfill the purposes of the statute of limitations.

- 6 -

When the complaint was filed, it represented a timely statement of every element of the claim, except in one respect: the plaintiff [] had not been formally named administrator. That deficiency, however, was minimal. At the time the complaint was filed, that is, within the statutory period, [the plaintiff] had applied for letters of administration. Under [20 Pa.C.S.A. § 3155(b)(3), the plaintiff,] as decedent's father[,] had a prior right to be appointed; having applied to be appointed, he was unlikely not to pursue his application to completion. Nor had anyone else applied. The only thing that held up the issuance of letters was [plaintiff's] failure to post a nominal bond of $1000. While we grant that the bond represents something of a contingency, we nonetheless find that in the circumstances, appellee's appointment as administrator was substantially assured at the time the complaint was filed, that is, within the statutory period of limitations.

*McGuire*, 385 A.2d at 468 (footnote omitted).

We then noted that this reasoning was similar to that used in *Beckman v. Owens*, 5 A.2d 626 (Pa. Super. 1939), a case in which we allowed a suit against an estate even though the executor named in the decedent's will had neither applied for nor been granted letters testamentary until after the statute ran. We quoted *Beckman*'s holding that

[A]n executor derives his authority to act from the will. The granting of letters testamentary by the register of wills is a *pro forma* act, to give effect to the will of the testator. . . . [P]arties, upon whom is a necessity of present action, may proceed on the presumption that [the executor appointed] will accept, and their action is valid until he actually renounces, or they have notice that he will not accept.

*McGuire*, 385 A.2d at 468, quoting *Beckman*, 5 A.2d at 627 (internal citation and quotation marks omitted).

We then contrasted *Beckman*'s facts with those of a case in which this Court declined to apply the relation back doctrine. In *Lovejoy v. Georgeff*,

303 A.2d 501 (Pa. Super. 1973), a minor child was injured in an automobile accident in which the driver was killed. The minor's father timely filed a writ of summons on behalf of his injured son against the father of the deceased driver as "administrator" of the driver's estate. In preparation for his suit against the driver's estate, the plaintiff initiated proceedings before the register of wills, resulting in the issuance of citations "notifying the parents of the driver that letters of administration on his estate had been applied for and direct[ing] them to appear before the register [] to take action or explain their position with regard to the application[.]" *Id.* at 502. The citations were not returnable until after the two-year statute of limitations on the civil action had run. *See id.* The driver's father ultimately applied for and was granted letters of administration after the statute of limitations had run. We distinguished these facts from *Beckman* by noting that

> when the [writ of summons] was filed, the identity of the administrator was uncertain; either parent [for the deceased driver] could have renounced the right to letters and the other accepted, or both could have renounced. At the time the statute ran, therefore, there could have been no such presumption[,] as in [*Beckman*] and as in the present case, that the father would be administrator. Thus[,] it was quite possible that the [writ of summons] had identified as a party someone who was not, and would not become, a party, so that the [writ of summons] might have been served on the wrong person entirely. This possibility introduced the sort of instability not present in *Beckman* or the present case, and was fatal.

*McGuire*, 385 A.2d at 469 (footnotes omitted). In contrast with *Lovejoy*, the *McGuire* court concluded that the defendant railroad could "proceed on the presumption that" the plaintiff's appointment as administrator would be

- 8 -

completed. *Id.* at 468-69. For that reason, the relationship between the plaintiff and the defendant "was not affected with the sort of instability that statutes of limitations seek to preclude." *Id.* at 469.

We reached a similar result a year later in *D'Orazio v. Locust Lake Vill., Inc.*, 406 A.2d 550 (Pa. Super. 1979). There, the decedent was a child who drowned in defendants' lake. Before the statute of limitations ran, the decedent's mother filed: (1) a petition for letters of administration and (2) a complaint against the defendant, naming herself as administratrix of her son's estate. The mother assumed that letters had been issued because she had obtained a bond and paid its premiums for several years. After the statute of limitations had run, however, she learned that the letters had not been issued because she had never executed the bond. Upon learning this, she signed the bond and was issued the letters. The trial court, however, dismissed the complaint because the letters had not been acquired until after the statute of limitations had run.

On appeal, we reversed and held that our decision in *McGuire* compelled a finding that the relation back doctrine applied, explaining:

> Although [the plaintiff] here was finally granted letters much longer after the statute's running than was [the plaintiff in *McGuire*], this fact does not alter our disposition. The crucial factors are that letters had been requested and the action commenced within the statutory period, and [the plaintiff's] appointment as administratrix, under the circumstances of this case, "was substantially assured at the time the complaint was filed, . . . within the statutory period of limitations."

*D'Orazio*, 406 A.2d at 552, quoting *McGuire*, 385 A.2d at 468.

Not long after ***D'Orazio***, our Supreme Court addressed a similar scenario in ***Estate of Gasbarini v. Medical Ctr. of Beaver Cnty.***, 409 A.2d 343 (Pa. 1979). There, the decedent died while a patient in the defendant hospital and under the care of the defendant physicians. The decedent's widow promptly applied for letters of administration, but her counsel failed to post bond. Counsel later filed a writ of summons against the defendants, naming the decedent's estate as plaintiff. Counsel again named the estate as plaintiff when he subsequently filed a complaint asserting wrongful death and survival actions. Defendants responded by filing preliminary objections alleging that the estate was not a proper party. When counsel failed to respond, the complaint was dismissed.

Unbeknownst to the widow, counsel was suspended and later disbarred. As a result, she hired new counsel and was named administratrix of her husband's estate after posting a bond. Counsel then petitioned to reinstate the complaint and amend its caption to add the widow as the estate's personal representative, which the trial court granted. On appeal, we reversed and ordered that the complaint be dismissed. On allowance of appeal, however, our Supreme Court adopted our reasoning in ***McGuire*** in applying the relation back doctrine in the widow's favor.

> The original complaint, filed by [prior counsel], made clear that the action was based upon our wrongful death and survival statutes. Further, as previously mentioned, the complaint made clear that [decedent's widow] was bringing this action in her capacity as administratrix of the decedent's estate.

* * *

- 10 -

> We believe the instant case is on all fours with **McGuire** and we believe its reasoning is persuasive. Instantly, the only deficiency in [plaintiff's] complaint was the fact she had not yet been named administratrix of decedent's estate. All other requirements, however, had been completed within a short time period after decedent's death and within the applicable statute of limitations for either a wrongful death or surviv[al] action. As we believe the appointment of appellant as administratrix should relate back to the . . . date on which the complaint was filed, we find that neither action is barred by the applicable statute of limitations.

*Id.* at 346-47.

Thereafter, in **Wilkes-Barre Gen. Hospital v. Lesho**, 435 A.2d 1340 (Pa. Cmwlth. 1981), our Commonwealth Court[5] considered a scenario where— unlike **McGuire**, **D'Orazio**, and **Gasbarini**—the decedent's plaintiffs waited until after the statute of limitations had run to apply to be the personal representatives of the estate. There, the plaintiffs' daughter allegedly died as a result of defendants' medical negligence. Two months later, the plaintiffs petitioned the Orphans' Court to settle her estate, **see** 20 Pa.C.S.A. § 3102 (governing settlement of small estates by petition), but did not apply for letters of administration. The plaintiffs then filed a complaint against defendants in the Arbitration Panels for Health Care, identifying themselves in the caption and body as individuals and administrators of their daughter's estate. Although letters of administration were eventually granted, the plaintiffs neither applied for nor were granted the letters until after the statute

_____

[5] "Commonwealth Court decisions do not bind this Court, but we may consider them as persuasive authority." **Cuth v. Cuth**, 263 A.3d 1186, 1191 n.5 (Pa. Super. 2021) (citation omitted).

- 11 -

of limitations had run. The defendants moved for summary judgment, but the arbitrator found that the relation back doctrine applied.

On appeal, the defendants argued that **McGuire**, **D'Orazio**, and **Gasbarini** supported reversal because the plaintiffs in those cases had applied for letters of administration before the statute of limitations had run, thus giving "substantial assurance that the letters would be granted to the person alleging his or her fiduciary capacity in the pleading." **Lesho**, 435 A.2d at 1342. Nevertheless, the Commonwealth Court held that the reasoning used in **McGuire** and reiterated in **Gasbarini** applied with equal force to the plaintiffs in **Lesho**, explaining:

> Absolutely nothing was changed in the [plaintiffs'] complaint by virtue of letters of administration having been granted to them after the statute of limitations had run. From the time the original complaint was filed, the [defendants] were aware that they were being sued for their alleged negligence resulting in the death of a named decedent. Every element necessary to establish the two causes of action against the [defendants] was set forth in the complaint, including the erroneous fact that the [plaintiffs] had been appointed administrators of their daughter's estate.
>
> * * *
>
> In any event, it is our opinion that by permitting the doctrine to apply to the circumstances of this case, the acts of the administrators will have been validated, a just result will have been achieved, the estate will have been benefited and a remedy will not have been lost. Neither will the objectives of the statute of limitations have been disturbed.

**Id.** at 1343.

Finally, this Court revisited the relation back doctrine in the context of a survival action in **Prevish**, **supra**. There, the plaintiff's wife allegedly

suffered a stroke and paralysis because of defendants' medical malpractice. After she died, the plaintiff filed a writ of summons against the defendants, with a caption naming his wife's estate as the plaintiff. In his subsequent complaint, filed after the statute of limitations had run, the plaintiff listed himself as the plaintiff and alleged that he had been appointed the executor of his wife's estate. The defendants filed preliminary objections to strike the complaint because the plaintiff had not obtained consent or leave to amend the complaint's caption to correct the name of a party. The trial court agreed and declined to apply the relation back doctrine because: (1) the writ of summons named the estate as plaintiff, and (2) no personal representative had been designated until after the statute had run.

On appeal, the plaintiff argued that the trial court should have allowed him to correct the caption to reflect his appointment as executor. The ***Prevish*** court reviewed all the above cases and found them distinguishable.

> In each case[,] the designation of the plaintiff as administrator/administratrix was premature, as certain steps remained to be taken which were not accomplished until after the statute of limitations had run. In all four cases, however, the defendants were notified, **before the statute of limitations had run**, of the fact that an action had been filed against them by a named individual who was, at least putatively, the personal representative of the decedent's estate. Insofar as the commencement of the action was concerned, nothing remained to be done after the limitations period had expired but to formalize the plaintiff's previously asserted appointment as personal representative.

***Id.*** at 204 (emphasis in original).

- 13 -

With this in mind, the **Prevish** court went on to find that the relation

back doctrine did not apply to the plaintiff's actions because

> [t]he writ of summons was the only document filed before the limitations period expired, and its caption identifies the estate of the decedent as the plaintiff. Such a writ is, of course, a nullity. Moreover, the writ does not identify the executor of the estate, nor does it inform the defendants that there is, even potentially, an executor (that is, that the decedent died testate). Concerning the parties' relationship, these facts evidence "the sort of instability that statutes of limitation seek to preclude." **McGuire**, **supra**.

> [Plaintiff] has cited no case, and we are aware of none, in which the relation back doctrine was applied to ratify, post-appointment, the attempted commencement of an action by a personal representative whose existence was in no way suggested by the pleading that he filed. We decline to extend the doctrine to encompass such a situation. Accordingly, we affirm the trial court's order dismissing the complaint.

**Id.** at 204-05.

With this background in mind, we turn to the parties' arguments on

appeal. Norfolk claims that Edwards lacked the capacity to bring her action

on behalf of her late husband's estate since a FELA action can be maintained

only by either the injured person or, if the person is deceased, their personal

representative. **See** 45 U.S.C. § 59.[6] Norfolk emphasizes that Edwards did

not apply to be the personal representative of her late husband's estate until

after the statute of limitations had run and, as a result, the complaint was a

_____

[6] "Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury." 45 U.S.C. § 59.

- 14 -

nullity because Edwards lacked standing to pursue claims on behalf of the estate at the time she filed the complaint.

Norfolk argues that the relation back doctrine does not apply in this case. Norfolk asserts that **McGuire**, **D'Orazio**, and **Gasbarini** support reversal because the plaintiffs in those cases applied for letters **before** the statute of limitations ran. Norfolk highlights the **D'Orazio** court's statement that the "crucial factors" in allowing the application of the relation back doctrine in that case were "that letters [of administration] had been requested and the action commenced within the statutory period," thus substantially assuring the plaintiff's appointment as administratrix. **D'Orazio**, 406 A.2d at 552. Further, Norfolk contends the presumption that one will be appointed as executor attaches only at the time the application is made. **See McGuire**, 385 A.2d at 468-69.

In response, Edwards concedes that FELA provides that the right of an action is given to the personal representative of a decedent's estate. Nevertheless, Edwards argues that, because FELA is remedial in nature, it must be liberally construed to effectuate its purpose, which is "to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consume[s] in its operations." Substituted Brief of Appellee, at 9-10, quoting **Wilkerson v. McCarthy, et al.**, 336 U.S. 53, 68 (1949) (Justice Douglas, concurring). Thus, FELA "excuses procedural defects so that [] actions may be decided on their merits." Appellee's Substituted Brief on Reargument, at 10.

Edwards contends that the relation back doctrine applies here. First, she notes that the plaintiffs in *McGuire*, *D'Orazio*, and *Gasbarini* all died intestate. Here, in contrast, Edwards was named as executrix in Decedent's will, which was formally recorded with the probate court on November 23, 2015, more than three years before suit was commenced. Next, she notes that in *Lesho*, the Commonwealth Court rejected the very same argument that Norfolk raises here: that *McGuire*, *D'Orazio*, and *Gasbarini* stand for the proposition that the relation back doctrine applies only when the plaintiff applies to be the personal representative before the statute of limitations has run. Rather, the *Lesho* court concluded that the reasoning used in *McGuire* and *Gasbarini* supported finding that the relation back doctrine could be applied even where the plaintiff waits until after the statute of limitations had run to seek appointment as the personal representative. Edwards further emphasizes that, like the plaintiffs in *McGuire*, *D'Orazio*, and *Gasbarini*, she identified herself in the complaint's caption as the personal representative of Decedent's estate, thus notifying Norfolk before the statute of limitations had run that an action had been filed against it by a person who was, at least putatively, the personal representative of Decedent's estate.

After careful review, we conclude that the trial court did not err in denying summary judgment and applying the relation back doctrine in this case. First, as we did in *McGuire*, we begin with the purpose of statutes of limitations to determine whether the relation back doctrine can be applied under these circumstances. Statutes of limitations "serve several purposes:

imposing finality on the litigation system; providing defendants with an end to their potential liability; and avoiding litigation of disputes involving stale evidence." ***Nicole B. v. Sch. Dist. of Philadelphia***, 237 A.3d 986, 994 (Pa. 2020). As this Court has long recognized, the "purpose of any statute of limitations is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims." ***McCreesh v. City of Philadelphia***, 888 A.2d 211, 222 (Pa. 2005) (citation omitted).

In ***McGuire***, ***D'Orazio***, ***Gasbarini***, and ***Lesho***, our courts noted two main reasons why application of the relation back doctrine did not contravene the purpose of statutes of limitations. First, in each of those cases, the complaint was timely filed within the statute of limitations and set out every element of the plaintiffs' claims. As such, except for the plaintiffs' formal appointment as personal representative, the defendants in those cases were put on notice before the statute of limitations had run that "an action had been filed against them by a named individual who was, at least putatively, the personal representative of the decedent's estate." ***Prevish***, 692 A.2d at 204. Thus, at that stage in those cases, the only thing that remained for the plaintiffs to do was to formalize their previously asserted appointment as personal representative. ***Id.***

The same applies here. Edwards timely filed her FELA action and set out all the elements of her claims before the statute of limitations had run, thus notifying Norfolk that it was a named defendant in a lawsuit and providing

the alleged basis for Norfolk's liability. Critically, just as the **Lesho** court recognized, the plaintiff's claims did not change because of Edwards' subsequent formal appointment as personal representative. **See Lesho**, 435 A.2d at 1343 ("Absolutely nothing was changed in the [plaintiffs'] complaint by virtue of letters of administration having been granted to them after the statute of limitations had run.").

Second, in each of the four cases reviewed above, the complaint listed the plaintiff as the personal representative of the estate in the caption or alleged that the plaintiff was the administrator or administratrix of the estate. **See McGuire**, 385 A.2d at 467; **D'Orazio**, 406 A.2d at 551; **Gasbarini**, 409 A.2d at 345; **Lesho**, 435 A.2d at 1341. Likewise here, in both her original and amended complaints, Edwards listed the plaintiff in the caption as "DENIA EDWARDS, Personal Representative for the Estate of DOUGLAS A. EDWARDS." Further, she averred in both complaints that she was the personal representative of the estate. **See** Complaint, 10/26/18, ¶ 2; Amended Complaint, 12/17/18, ¶ 2. As a result, although Edwards had not yet applied to be the personal representative of the estate, the complaint put Norfolk on notice that she was bringing the action in her capacity as personal representative of the estate and identified the claims she would bring.

On this point, we do not find it fatal to her claims that Edwards waited until after the statute of limitations had run to apply to be the personal representative of Decedent's estate. In **McGuire**, **D'Orazio**, and **Gasbarini**, despite each of the decedents dying intestate, it was "substantially assured"

- 18 -

that each of the plaintiffs would be appointed the personal representative of the estate.[7]  In each case, there was no dispute that the plaintiff would be appointed the estate's personal representative, as the only factor delaying the appointment was the oversight of paying for or executing the bond for the letters of administration.

Although here the decedent died testate, consistent with the above caselaw, there was no real dispute that Edwards would be appointed as personal representative since she was the named executor in Decedent's will, which had been formally recorded in the West Virginia probate court a month after Decedent's passing.  Under West Virginia law, the only things Edwards needed to do to be appointed the personal representative was to file the application of fiduciaries and take an oath in the county in which Decedent's will had been recorded.  *See* W. Va. Code § 44-1-3.[8]  Given that Edwards was:  (1) named the executor in her husband's will and (2) listed herself in her capacity as personal representative as the plaintiff in the timely-filed complaint, Norfolk could "proceed on the presumption" that she would seek appointment as personal representative of her late husband's estate. *McGuire*, 385 A.2d at 468, quoting *Beckman*, 5 A.2d at 627.  Thus, just as the *McGuire* court concluded, we find that "the relationship between the

_____

[7] In *McGuire*, the appointment was delayed by the plaintiff's failure to post a bond; in *D'Orazio*, it was the plaintiff's failure to execute the bond; and in *Gasbarini*, it was plaintiff's counsel's failure to post bond.

[8] Edwards did not need to post bond because she was the sole beneficiary of her late husband.  *See* W. Va. Code § 44-1-8(b).

parties was not affected with the sort of instability that statutes of limitations seek to preclude." **McGuire**, 385 A.2d at 469.

Citing **McGuire**, Norfolk asserts that the presumption that Edwards would seek appointment as personal representative could attach only if she made a timely application. Based on our reading, however, **McGuire** stands for no such thing. In **McGuire**, we held that the defendant railroad could presume that the plaintiff would be appointed the personal representative of his daughter's estate because he had applied for letters of administration and had a prior right to be appointed under the relevant statute. **Id.** at 468. For support, the **McGuire** court likened its reasoning to that in **Beckman**, in which this Court held that a creditor of the decedent could file suit against the executor appointed in the decedent's will prior to the probate of the will and issuance of letters testamentary. The **McGuire** court quoted the **Beckman** court's holding that an executor "derives his authority to act from the will. The granting of letters testamentary by the register of wills is a *pro forma* act, to give effect to the will of the testator." **Id.** at 468, quoting **Beckman**, 5 A.2d at 627. The **McGuire** court further quoted **Beckman**'s holding that the parties "may proceed on the presumption that the executor appointed will accept, and their action is valid until he actually renounces, or they have notice that he will not accept." **McGuire**, 385 A.2d at 468, quoting **Beckman**, 5 A.2d at 627 (parentheses omitted). Thus, the **McGuire** court equated its plaintiff father with an executor named in a decedent's will who is presumed

to have accepted the appointment unless and until that appointment is renounced.

In sum, we read nothing in **McGuire**, **D'Orazio**, or **Gasbarini** as precluding the conclusion that the trial court reached in this case. Edwards was named the executor in Decedent's will and timely filed her FELA action, in which she averred that she was the personal representative of Decedent's estate. Like the defendants in **McGuire**, **D'Orazio**, **Gasbarini**, and **Lesho**, Norfolk was put on notice before the statute of limitations had expired that an action had been filed against it by a plaintiff "who was, at least putatively, the personal representative of the decedent's estate." **Prevish**, 692 A.2d at 204. While it may be preferable that a plaintiff seek appointment before the statute runs, we do not find that the failure to do so compels dismissal of a complaint when the plaintiff is the named executor and avers that she is the personal representative in a timely-filed complaint.[9]

---

[9] This decision is consistent with, and in furtherance of, the broad remedial purpose of FELA. **See Kulavic v. Chicago & Illinois Midland Ry. Co.**, 1 F.3d 507, 512 (7th Cir. 1993), citing **Atchison, Topeka and Santa Fe Ry. Co. v. Buell**, 480 U.S. 557, 562 (1987) ("FELA is, therefore, a broad remedial statute to be construed liberally in order to effectuate its purpose."). **See also Lang v. Texas & P. Ry. Co.**, 624 F.2d 1275, 1277 (5th Cir. 1980) (limitation on enforcement of FELA claim to personal representative not for purpose of assuring proper party before court but, rather, to assure all beneficiaries and heirs access to proceeds of litigation and guarantee railroad not subject to multiple recoveries).

Order affirmed. Case remanded for further proceedings consistent herewith. Jurisdiction relinquished.

Judges Bowes, Dubow, Kunselman, Nichols, King and Lane join this Opinion.

Judge Stabile files a Dissenting Opinion in which Judge Sullivan concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/13/2025